## Wahl, Appellant, *v.* Strous et al.

Argued March 27, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*J. Thomas Hoffman,* with him *A. Arthur Boscia,* for appellant.

*Robert D. Dalzell,* of *Dalzell, McFall & Pringle,* for appellee.

OPINION BY MR. JUSTICE STERN, April 23, 1942:

The Pennsylvania Railroad Company settled a death claim with the decedent's widow, Christine Strous, and her son, Edward Strous, behind the back of their attorney, Elmer J. Wahl. The latter brought suit in trespass against his clients and the railroad company to recover, as compensatory damages, the value of the contract under which he had been employed as attorney. The trial judge gave binding instructions in favor of Mrs. Strous and her son, which action of the court is not objected to by plaintiff. The jury found a verdict against the Pennsylvania Railroad Company, but the court entered judgment for the company n. o. v., and plaintiff appeals.

The suit was brought on the theory—a well-established principle of law—that if one, with knowledge of an existing contract between others, intentionally, and without reasonable justification or excuse, induces one of the parties to breach the contract, he becomes liable to the other for the resulting damage. This principle was applied in *Klauder v. Cregar,* 327 Pa. 1, 192 A. 667, and, as plaintiff relies almost entirely upon that case, it becomes necessary to recite with some particularity the facts in the present controversy in order to demonstrate that they are fundamentally different from those in the *Klauder* case.

William Henry Strous, a locomotive engineer employed by the railroad company, was killed in an accident. His widow and son gave to plaintiff, a member of the bar, a power of attorney to institute and prosecute an action against the company, with "full power to compromise and settle said suit or suits . . . and to receive forty per centum (40%) of all he may recover by reason

of said suit or suits which he may bring, or by reason of any compromise that he may make. This power of attorney, being made with an interest to said Elmer J. Wahl, is irrevocable." Plaintiff notified the company that he had obtained this power of attorney and that all matters concerning the claim should be taken up with him. It appears that one Andrew J. McCusker, a locomotive fireman employed by the company, who had been a friend of the decedent since childhood and had been local president and a representative of the union assisting members and widows in their disability and death claims, had offered his friendly services to Mrs. Strous, and it was through him, at least indirectly, that she had come to consult plaintiff for the purpose of having an administrator appointed for her husband's estate. As the case turns largely upon the status of McCusker, and as plaintiff insists upon branding him as a kind of "fifth columnist" working covertly for the interests of the railroad company, it is proper at this point to state that there is not an iota of testimony warranting such a charge or in any way indicating that McCusker was acting as agent for the company instead of for Mrs. Strous. After she and her son, at plaintiff's request, had executed the power of attorney, she became worried by what she had done, and McCusker, when so informed by her, reprimanded plaintiff and told him he was not to have anything to do with the case. Mrs. Strous telephoned several times to plaintiff and asked him for a return of the power of attorney, which he refused. She then told him he was discharged. When McCusker and Mrs. Strous started to negotiate with the claim agent of the company, the latter expressed hesitation as to whether he could deal with them in view of the outstanding power of attorney, but upon her subsequently advising him that she had discharged plaintiff he carried on negotiations for several months with her and McCusker and finally settled with them for $16,000.

In the *Klauder* case the agent of a casualty insurance company took the initiative in an attempt to obtain

a settlement with a claimant; the latter insisted that she could not and would not settle without seeing her lawyer, to whom she had given a power of attorney; the agent then stated to her that the power of attorney she had signed "was not any good" and that she would not have to pay her attorney if she settled out of court; at the trial the claimant testified that she did not pay her lawyer because the representative of the insurance company had told her she did not have to pay him. In the present case no such representations were made or tactics employed by the railroad company's agent. It was Mrs. Strous herself who broke with her attorney before entering upon any real negotiations with the company, and the company's agent consented to deal with her only after she informed him that she had discharged plaintiff. Plaintiff produced no evidence tending to prove that the railroad company procured or attempted to procure any breach of the contract between him and his clients. It did not, in order to induce her to settle, tell her not to pay her attorney, nor did it misrepresent to her what her obligations were in that regard. An action for interference with another's contract is, in a way, analogous to the old action for alienation of affections, in which, of course, there was no liability if the affections, though lost, were not alienated by the alleged tortfeasor.

Plaintiff apparently labors under the impression that the mere negotiation of a settlement directly with his clients made the company liable to him. Probably it is now more difficult for him, as a practical matter, to secure the payment of the fees to which he may be entitled, but his power of attorney did not, either expressly or by implication, limit the right of Mrs. Strous and her son to settle their claim. Even though an agent's compensation is made contingent upon his success in accomplishing the purpose of his agency, the principal does not thereby restrict his own right to transact the business for which the agent was employed: Restatement, Agency, section 449. This is especially true in the

case of client and attorney. Indeed it is almost universally held that even if a power of attorney provides in express terms that the client is not to have the right himself to compromise or settle his claim, such a provision is void as against public policy. Settlements are favored by the law, which, therefore, frowns upon arrangements whereby a client would need his attorney's permission to settle a suit, and it is immaterial that the attorney may be interested in the sense of his compensation being contingent upon the result of the litigation or settlement: 7 C. J. S. 1066, §186 b (2) ; p. 1070, §187 b (3) ; p. 1075, §189; 5 Amer. Jur. 328, 329, §116; 121 A. L. R. 1122; 2 Thornton on Attorneys at Law, 672, §390; p. 754, §435; p. 804, §456; p. 806, §457. Therefore, in settling their claim, even though without plaintiff's knowledge or consent, there was no breach by Mrs. Strous and her son of their contractual obligations to him. Their only obligation was to pay whatever fees or compensation might be due; to what extent he may now be entitled to recover such fees or compensation in an action on his contract is not here involved. Inasmuch as defendant company, unlike the insurance company in the *Klauder* case,* did not advise his clients not to pay him, nor represent that they would be under no obligation to do so if they themselves effected the settlement, no breach of plaintiff's contract was induced by the company, and the court below properly entered judgment in its favor n. o. v.

Judgment affirmed.

---

* Likewise in *Caskie v. Philadelphia Rapid Transit Company*, 321 Pa. 157, 184 A. 17, the defendant was charged with representing to the plaintiff's employer that the plaintiff was not entitled to the compensation claimed by him for services rendered.