J. R. KVENILD, CFC Realtors, and C. Jack Minter, Appellants (Defendants),

v.

Daryl W. TAYLOR, Appellant (Third Party Defendant),

v.

Phillip H. LAVOIE and Marilyn J. Lavoie, husband and wife, Appellees (Plaintiffs),

v.

Bruce H. McMILLAN, and Dorothy H. Tanz, Administratrix of the Estate of Virginia L. Barrett, Deceased, Appellees (Defendants),

v.

William BARRETT, Beverly Barrett, James L. Barrett, Rosalie Barrett, Appellees (Third Party Defendants).

No. 5001.

Supreme Court of Wyoming.

May 11, 1979.

John C. Brackley and W. A. Smith, Lander, signed brief, for appellants Kvenild, CFC Realtors, Minter and Taylor.

Robert O. Anderson and William V. Eichelberger, Riverton, signed brief, for appellees Lavoies.

Richard I. Leedy, Riverton, signed brief, for appellees McMillan.

Donald P. White, Riverton, signed brief, on behalf of appellees Barretts.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

The appellants-defendants J. R. Kvenild, Daryl W. Taylor, and C. Jack Minter, doing business as CFC Realtors (defendants), appeal from a judgment of the district court in which the appellees-plaintiffs Phillip and Marilyn Lavoie (Lavoies),[1] were awarded damages, because the defendants tortiously interfered with the Lavoies' contractual rights to buy a certain piece of property. The judgment also awarded attorney's fees of $4,500.00 each to two other parties—appellees-defendants Bruce H. McMillan (McMillan)[2] and Virginia L. Barrett (Barrett)[3] to be paid by the defendants. In addition, certain other costs were taxed to the defendants.[4] The defendants assert that the district court's judgment is erroneous because:

---

1. The Lavoies also appealed raising several issues but their appeal was dismissed because of an untimely notice of appeal. (Order denying appeal dated January 18, 1979, docket No. 5002.)

2. McMillan, as an appellee in the current posture of this case, asserts that the district court properly awarded him attorney's fees to be paid by the defendants, because he was required to defend his title to the property in question.

3. Barrett died before the judgment was entered, consequently Dorothy H. Tanz, the administratrix of her estate, is appellee here and argues that defendants were properly found to be liable for attorney's fees incurred as a result of Barrett and the estate having to defend the action.

4. The judgment of the district court recited a series of general findings and, after noting that when Barrett was referred to it meant her estate, went on to adjudge:

"1. The plaintiffs Phillip H. Lavoie and Marilyn J. Lavoie, jointly and severally, are hereby given judgment against defendants Virginia L. Barrett, and J. R. Kvenild, and CFC Realtors as an unincorporated business entity, jointly and severally, in the sum of $4,532.00.

"2. The plaintiffs Phillip H. Lavoie and Marilyn J. Lavoie, jointly and severally, are hereby given judgment against the defendants J. R. Kvenild and CFC Realtors, as an unincorporated business entity, jointly and severally, in the sum of $2,500.00 as exemplary damages.

"3. Bruce H. McMillan is the owner of, and is entitled to the possession of the following

(1) The decision is not supported by the evidence submitted at trial and is, in fact, contrary to the evidence;

(2) The district court created rights in the Lavoies that cannot exist under the Statute of Frauds (§ 16–1–101, W.S.1977);

(3) The district court awarded attorney's fees to certain parties to be paid by the defendants for which there is no statutory or other legal basis.

We will reverse with directions, except as to the quiet title and rental claims of McMillan which we will not disturb.

The facts of this case are not complex, nor are the legal principles that govern its disposition. Procedurally the case became snarled to a degree that can only be described as chaotic. The factual situation giving rise to this litigation commenced in 1972. This litigation commenced in February, 1975, and it was not disposed of until over three years later.

The Lavoies executed a "Standard Purchase Offer, Acceptance and Receipt" on December 4, 1972, offering to buy, for a consideration of $16,200.00, a house located in Riverton, owned by Barrett and offered for sale through the defendant Kvenild, real estate agent for CFC Realtors, an unincorporated firm composed of Kvenild, Taylor and Minter. The Lavoies paid down $300.00 as earnest money. The Lavoies took possession of the property pursuant to a provision in their written and executed standard purchase-offer contract which allowed them to rent the property at the rate of $130.00 per month, pending anticipated closure of the sale. Other pertinent provisions of the contract are: (1) buyers to pay balance at closing; (2) buyers to apply for a conventional loan in the amount of $14,-550.00; (3) if the property or buyers fail to qualify for a loan in the amount of $14,-550.00, the earnest deposit money to be refunded and contract to become null and void; (4) actual possession, or constructive possession by assignment of the seller's estate in existing leases, to be delivered to buyer at closing on or before March 1, 1973. The Lavoies hoped to realize enough money from the sale of a home they owned in Colorado to make the rest of their down payment on the premises. However, the sale of that property produced nothing with which they could make the down payment. An attempt was made to get a V.A. loan, but the Lavoies did not qualify because they had an outstanding V.A. loan on the Colorado home, assumed by the buyer. Mr.

described real estate situate in Fremont County, Wyoming, to-wit:

Lots Numbered 1 and 2, in Block 29, of Ashgrove Addition to the City of Riverton; and none of the other parties herein, or any person taking through any of them have any right, title, interest, estate, claim, or demand therein (other than bare possession by the plaintiffs which is at the sufferance of said Bruce H. McMillan); and the title of said Bruce H. McMillan is hereby quieted in him as against each and all of the other parties to this action.

"4. Cross claimant Bruce H. McMillan is hereby awarded judgment against the defendants Virginia L. Barrett and CFC Realtors, and its members individually, Daryl W. Taylor, C. Jack Minter and J. R. Kvenild, jointly and severally, in the sum of $4,500.00.

"5. Bruce H. McMillan is hereby awarded judgment against the plaintiffs Phillip H. Lavoie and Marilyn J. Lavoie, jointly and severally, in the sum of $3,344.00 for the use and occupancy of, and as rentals for the premises from July of 1976 to date.

"6. Plaintiffs shall have judgment against defendants Virginia L. Barrett, J. R. Kvenild and CFC Realtors for their costs herein expended, herein taxed in the sum of $50.00; and leave is given the plaintiffs to apply to the court for judgment for additional costs which may be properly taxed herein.

"7. Virginia L. Barrett is hereby given judgment against CFC Realtors, and against each of its members Daryl W. Taylor, C. Jack Minter and J. R. Kvenild individually, jointly and severally, for the sume [sic] of $4500 as costs and attorneys fees, for all sums adjudged against her in favor of the plaintiffs, including costs, the sum of $4,582.00, and for the sum adjudged against her in favor of Bruce H. McMillan, $4500, in all the total sum of $13,582.00; and she also shall have her costs herein allowed, if any, to be added to the judgment."

NOTE: The portions of the judgment affected by this appeal are paragraphs 1, 2, 4, 6, and 7. Paragraphs 3 and 5 are in no way challenged in this appeal; and, hence, we do not disturb those portions of the order in any way.

Lavoie did not want to apply for an F.H.A. loan. The Lavoies did not apply for a conventional loan within the March 1, 1973 deadline of their purchase offer. The $300.00 earnest money was never returned to the Lavoie and eventually they conceded that this amount had been forfeited by them.

The Lavoies continued to occupy the house during 1973. In the Fall of 1973, Barrett stopped by the house and talked to the Lavoies because she was concerned about their intentions. She was afraid that they would vacate the premises before winter and leave her without tenants and she would be stuck with the utilities for the winter months. The Lavoies assured Mrs. Barrett that they would stay through the winter and that they were still interested in buying the property and were saving money for that purpose. The Lavoies made a number of minor repairs and improvements which they claimed as a part of their damages. Barrett disclaimed knowledge of these repairs and improvements, with the exception of replacement of a door and repair to a water line for which Barrett provided a backhoe and pipe, and the Lavoies provided the labor. The Lavoies occupied the premises during the Winter of 1973–1974 and, in the Spring of 1974, the subject of sale of the property was again broached to the Lavoies by the defendants. Defendant Kvenild informed the Lavoies, Barrett was anxious to proceed with the sale of the house and it would have to be reappraised because of inflated value since December, 1972. The Lavoies contacted Barrett about this price-increase matter, and Mrs. Barrett orally and informally advised she would sell the house to them at the original $16,200.00 price. The defendants, still acting as her agent, then proceeded to push the sale to a closing which they were to handle for Barrett. The Lavoies negotiated for a loan, eventually approved.

About that time, however, the Lavoies discovered termites or some wood-eating insect, in part of the house. Extermination was arranged by the Lavoies and the defendants in something of a joint effort and provided at the cost of Barrett. The La-

voies also asked that an examination of the house be made to ensure there was no structural damage and, if there was such damage, they would insist that Barrett bear the cost of such repair. The Lavoies stated to the defendant Kvenild that they did not want to buy a house that was going to fall down around their ears. A carpenter was never found to do such a structural inspection, and Barrett told defendants that in any case she would not bear the expense of such a thing.

At about that point, McMillan offered to buy the property for $17,600.00. The defendants took the offer to Barrett. She accepted, stating that she had gone as far as she would go with the Lavoies. When the Lavoies found out that the house had been sold, they sought legal advice. Two lawyers to whom they talked were too busy to accept the case. Eventually they talked with John R. Hursh, a Riverton lawyer. Hursh contacted the defendants and discussed the factual situation with defendant Kvenild. On August 1, 1974, a letter, written by Hursh, was mailed to all parties to this house-selling deal and suggested that it should be resolved before any closing took place in order to avoid litigation. The defendants decided there was no legal merit to the Lavoies' claim to the house, McMillan was so informed and the closing took place.

The Lavoies filed their complaint which initiated this litigation on February 21, 1975. Numerous counterclaims and cross-claims were filed by the various named defendants. Parties were alternatively dismissed from the suit and rejoined and lengthy continuances granted. The matter finally came on for trial to the district court without a jury on August 22, 1977. After three days of trial, the court set oral arguments for September 1, 1977. These were heard, the court then took the case under advisement and, on March 7, 1978, a written judgment was entered.

■ Defendants assert that the evidence does not support the judgment rendered by the district court. We agree. We approach the issue of the sufficiency of the evidence

mindful of our often-repeated rule that we cannot substitute our judgment for that of the trial court. *True v. Hi-Plains Elevator Machinery, Inc.*, Wyo.1978, 577 P.2d 991. The findings of the trial court must be sustained unless clearly erroneous or contrary to the great weight of evidence. *True v. Hi-Plains Elevator Machinery, supra.* However, findings and judgment which are unsupported by the evidence, contrary to the evidence, or obviously against the great weight of evidence, may not stand. *Barber v. State Highway Commission*, 1959, 80 Wyo. 340, 342 P.2d 723.

We view the pleadings and decision rendered in this case as sounding exclusively in tort, specifically tortious interference with contract. The Lavoies' complaint makes frequent mention of a "breach" by Barrett, and the matter of "breach" is much discussed in the other proceedings and trial. However, it is couched in a manner so as to leave us to understand that the only real issue presented to the trial court, and the only issue decided, was one relating to a tort. We perceive no issue as to breach of contract other than that the Lavoies claimed that Barrett breached her contract in the process of tortiously interfering with it, a hybrid concept unsupported by any authority we can find. This is all to say that the Lavoies did not seek a remedy sounding in contract and throughout the proceedings and trial the case was so treated by the district judge. We will view the appeal in that light as well.

■ While the Lavoies did not seek a remedy for breach of contract, nor was the case tried on that basis, we will briefly discuss some of the issues which relate to the question of breach for the purpose of clarifying the result reached here. The trial court made no specific findings of fact. The transcript of his comments at the close of the trial and the judgment merely reflect a conclusion that there were sufficient indicia of a contract so that he could find there was tortious interference with a contract. Of course, in the setting of tortious interference with a contract, it is not *necessarily* fatal to a cause of action that an underlying contract may be voidable by reason of the Statute of Frauds, suffers from formal defects, lack of consideration, lack of mutuality, or even uncertainty of terms, or harsh and unconscionable provisions, or conditions precedent to the existence of the obligation. The law seems to indulge in the presumption that even unenforceable contracts will be carried out if no third person interferes. Prosser, Torts 4th Ed. (1971), Ch. 25, § 129, p. 932. There appears to be a split of authority on the point of whether there *must* be an enforceable contract to sustain the action. We will save that point for a more precise determination on another day.

In this case a number of thorny questions were presented to the trial court with regard to the validity and enforceability of the contract. Was there consideration by the Lavoies? Was there mutuality of obligations? Was there sufficient certainty of terms? What effect does the Statute of Frauds have? Did the Lavoies rescind by delay in demand for correction of any termite damage by Barrett? Was there an unaccepted counter-offer by the Lavoies? We reemphasize that these matters would not necessarily be fatal in the tortious interference with contract setting. If the case were to be taken out of the tortious interference with contract setting and placed in a breach-of-contract setting, they would become considerably more important. In the breach-of-contract setting, the evidence indicates there may be no contract to be breached. We do not decide this question because we do not need to do so. The only issue here is whether, in the total picture, there was sufficient evidence to sustain a conclusion of tortious interference with contract, taking into consideration its necessary elements. As will be more clear in the ensuing pages of the opinion, *even if* there are sufficient indicia of contract to support the action, the Lavoies cannot succeed.

■ Intentional interference with contractual relations without justification creates liability for harm caused thereby. *Wartenslebe v. Willey*, Wyo.1966, 415 P.2d 613, 614. This tort action was discussed and

defined in *Board of Trustees of Weston County School District No. 1, Weston County v. Holso,* Wyo.1978, 584 P.2d 1009, reh. den. 587 P.2d 203, although the case now before us was tried and decided before that decision was issued. The case, nevertheless, represented the state of the law then existing. The elements of the tort were there delineated as:

"(1) the existence of a valid contractual relationship or business expectancy;

"(2) knowledge of the relationship or expectancy on the part of the interferor;

"(3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and

"(4) resultant damage to the party whose relationship or expectancy has been disrupted." Id., at 1016–1017.

\*   \*   \*   \*   \*   \*

"*These theories, however, do not apply to actions between parties to an existing contract*—they lie only against outsiders who interfere with the contractual expectancies of others." Id., at 1017, supra. (Emphasis in original.)

Generally, see Anno., "Liability for procuring breach of contract," 26 A.L.R.2d 1227 with Later Case Service. See also, *Comtrol, Inc. v. Mountain States Telephone and Telegraph Co.,* 1973, 32 Colo.App. 384, 513 P.2d 1082 and West's Digest System, Torts, ⊷12.

■ Here the Lavoies and Barrett were parties to some sort of oral arrangement, after their written contract terminated. We shall assume, without so deciding, that there was a sufficient contractual relation to support a finding that there was a contract that could be interfered with.[5] Under the above-cited rule, Barrett cannot be held liable for tortious interference with contract because she was a party to the contract she is alleged to have interfered with. The defendants cannot be held liable either

because they stood in a relationship of responsibility to Barrett. They were not strangers to the contract. They were agents protecting the interests of their principal. Prosser, Torts 4th Ed. (1971), Ch. 25, § 129, p. 943; Restatement, Torts § 767(d), pp. 68–69 (1938). Their roles as agents of Barrett never ended. The record can only support a finding that defendants were privileged to advise Barrett to enter into the contract for sale with McMillan, and they were justified in doing so in view of the Lavoies' equivocation and delay in consummating of the oral arrangement they had with Barrett. *Wartensleben v. Willey,* supra at 614–616. This determination is dispositive of the appeal, and we need not pursue the inadequacies of the Lavoies' failure of proof further. We hold that there was no evidence to sustain that necessary element of a claim of tortious interference with a contract.

■■ It follows that we must reverse those portions of the judgment which awarded attorney's fees to McMillan and Barrett against the defendants, since, in the first place, there is no liability by defendants to the Lavoies for the basic claim of tortious interference with contract. In the second place, as a general rule, attorney's fees are not recoverable unless there is specific statutory authority therefor, or unless such are provided for by contract. *Werner v. American Surety Company of New York,* Wyo.1967, 423 P.2d 86, 88. There is no claim made herein that there is either statutory authority or a contractual obligation which would require the defendants to pay the attorney's fees awarded against them. There is a claim that the wrongful acts of the defendants can be the basis for the award of the attorney's fees. This claim is made in reliance upon *Olds v. Hosford,* Wyo.1960, 354 P.2d 947; 22 Am.Jur.2d Damages, § 166; and Anno., 45 A.L.R.2d 1183, § 2.[6] None of these authorities are in

---

**5.** Prosser, Torts 4th Ed. (1971), Ch. 25, § 129, p. 932, supra.

**6.** McMillan also cites *Murray First Thrift & Loan Co. v. N–C Paving,* Wyo.1978, 576 P.2d 455, 457. That opinion is abundantly clear that the attorney's fees there approved were not

expenses incurred in litigation but rather incurred because N–C Paving incurred legal expenses incident to an attempt to mitigate the damages arising from the wrongful act of a breach. The case has no application to the case at bar.

point in the context of this case. This is so because we hold there is no actionable tortious act committed by the defendant. The rule referred to by appellees states that where the natural and proximate consequence of a tortious act of a defendant has been to involve plaintiff in litigation with a third person, reasonable consequences for attorney's fees incurred by plaintiff may be recovered as damages against the author of the tortious act. 45 A.L.R.2d 1186. A review of the cases cited for the rule reveals that it is inapplicable to the case at bar, because defendants have committed no tortious act.

We reverse the judgment of the district court to the extent required by our determination herein in the following particulars:

(1) The award to the Lavoies of $4,532.00 for general damages against the defendants and Barrett;

(2) The award to the Lavoies of exemplary damages in the sum of $2,500.00 against the defendants;

(3) The award of attorney's fees to Bruce McMillan in the amount of $4,500.00 against the defendants;

(4) The award of costs to the Lavoies in the amount of $50.00 against the defendants; and

(5) The award to Virginia L. Barrett of attorney's fees of $4,500.00 to be paid by defendants.

It is noted that we have vacated and reversed the judgment of the district court as to Barrett, as well as the defendants, even though she did not appeal the judgment against her. Where the rights of the parties are so intermingled or where the error permeates the entire case, the court may reverse as to nonappealing parties in the interests of justice. *Kure v. Chevrolet Motor Division*, Wyo.1978, 581 P.2d 603, 610 (fn.9).

Reversed and remanded with directions to vacate the judgment to the extent indicated and that judgment be entered in favor of the defendants and the Barrett estate, all parties to individually bear their own attorney's fees with costs to be taxed to the Lavoies. We do not disturb those parts of the judgment and decree quieting title in McMillan or the judgment in favor of McMillan against the Lavoies in the sum of $3,344.00 for unpaid rent.