W. Nyles SPURLOCK, Appellant (Appellant-Petitioner),

v.

BOARD OF TRUSTEES, CARBON COUNTY SCHOOL DISTRICT NO. 1, State of Wyoming, Appellee (Appellee-Respondent).

No. 84-66.

Supreme Court of Wyoming.

May 2, 1985.

C.M. Aron and Sid L. Moller, of Aron and Hennig, Laramie, for appellant.

John A. MacPherson and Catherine MacPherson, of Johnson, MacPherson & Noecker, Rawlins, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellant appeals from a decision of the district court which affirmed the decision of appellee to discharge appellant from the position of principal of Morrow School in Baggs, Wyoming, and from his teaching position in the school district.

We affirm in part and reverse in part.

Appellant words the issues on appeal as follows:

"A. Whether a school principal, who. was initially employed as a classroom teacher, retains tenure rights under the Wyoming Teacher Employment Law

once he accepts a principal's position? If so, then in the circumstances of this case,

"(1) Whether the Appellant was afforded procedural due process by the Board of Trustees when it denied Appellant's claim for reinstatement as a classroom teacher; and/or

"(2) Whether there was sufficient evidence to support the Board's decision that the Appellant was unfit to return to classroom teaching?

"B. Whether there was sufficient evidence to support the Appellant's dismissal as a principal?"

Appellant was employed by appellee as a classroom teacher during the school years of 1970–71, 1971–72 and 1972–73. He was offered and signed a classroom-teacher contract for the school year 1973–74, but was later appointed principal of the Morrow School at Baggs, Wyoming, by appellee for that school year. He held that position for nine years, until he was terminated after the 1981–82 school year.

Bruce Harvey was employed by appellee as a classroom teacher at the Morrow School for the school year 1981–82, and his wife, Susan, was there employed by appellee as a part-time classroom teacher for the same school year. The teaching contracts for the Harveys were not renewed for the 1982–83 school year.

A few weeks before the end of the 1981–82 school year, on May 5, 1982, the Harveys and appellant had a confrontation for which incident appellant was discharged. The nature of the confrontation will be more detailed infra.

## DISCHARGE FROM POSITION AS PRINCIPAL

We need not consider whether or not appellant received proper notice of a hearing in connection with the discharge from the position as principal, or whether or not sufficient evidence was presented for such discharge at the hearing, inasmuch as appellant's position as principal was not a tenured position and appellee had no obligation to renew appellant's contract as a principal for the 1982–83 school year. We

settled this issue in *Seyfang v. Board of Trustees of Washakie County School District No. 1*, Wyo., 563 P.2d 1376 (1977). It would serve little purpose to here repeat the rationale there set forth. We only note that we carefully analyzed the language of the Wyoming Teacher Employment Law, § 21–7–101 et seq., W.S.1977, and the legislative intent thereof to conclude that tenure afforded for the classroom teacher position or its equivalent was not likewise afforded for administrative or supervisory positions. We said at page 1381:

"Even the applicability provision of the act refers to the function of teaching, not supervising. This separation of functions is emphasized by the certification provisions, § 21.1–14(c), supra, [now § 21–2–304(a)(iii), W.S.1977] which clearly distinguish the qualifications for teaching and administrating, even though one must be a teacher to be an administrator."

Appellant attempts to distinguish the *Seyfang* case from this case in that Mr. Seyfang was a superintendent and appellant was a principal. The rationale and analysis scrivened by Justice Rose in *Seyfang* is equally applicable to both positions. Both positions are included in that which is commonly referred to as "management." The Wyoming Teacher Employment Law does not grant tenure to the position of principal, and appellee was not prevented by the act from refusing to renew appellant's contract as principal.

## DISCHARGE FROM TEACHING POSITION

However, the Wyoming Teacher Employment Law is specific in granting tenure to a classroom teacher who has

"* * * been employed by the same school district in the state of Wyoming for a period of three (3) consecutive school years, and has had his contract renewed for a fourth consecutive school year." Section 21–7–102(a)(ii)(A), W.S. 1977.

As noted, there is a distinction between the ability to obtain tenure for a teaching position and the ability to do so for an administrative position. There may also be a distinction between the ability to maintain tenure status in a teaching position when one later assumes an administrative position and the ability to attain a tenure status in a teaching position by virtue of time spent in an administrative position. We do not here have to consider the latter inasmuch as appellant qualified for tenure as a classroom teacher under the portion of § 21–7–102(a)(ii)(A) quoted supra before he assumed the position as principal.

■ Appellee contends that appellant lost this tenure when he became a principal. We cannot agree. If appellee were correct, there would be a simple procedure to circumvent a teacher's tenure: make him a principal and then discharge him. It is desirable—and even important—to have people with extensive classroom teaching experience in administrative positions. It would be difficult to fill administrative positions with experienced teachers if the teachers would have to give up tenure upon accepting administrative positions.

Appellant became tenured as a teacher pursuant to the provisions of the Wyoming Teacher Employment Law. His continued employment as a certified professional employee did not change his tenured position as a classroom teacher. There is nothing in the act to reflect that such a change should occur. Accordingly, appellee had to afford appellant the procedural and evidentiary standards incident to a tenured classroom teacher position before it could discharge appellant from such position.

The incident which gave rise to the confrontation between appellant and the Harveys began with a letter to the editor of a local newspaper written by Bruce Harvey concerning appellant. The letter angered appellant, and he confronted the Harveys in one of the classrooms after the Harveys' working hours. The Harveys had gathered up some books to take home when appellant appeared and stood in the only doorway to the classroom. Bruce Harvey asked appellant if he could help him and appellant said "I don't know, can you?" From this mild start, the conversation became more acrimonious.

Susan Harvey and Bruce Harvey testified separately that appellant blocked the doorway to the room, and that when Bruce asked him to get out of the way, appellant said, "don't touch me." The Harveys then went to some desks in the room and sat down. Susan Harvey said that physical contact between Bruce Harvey and appellant did not occur. Bruce Harvey also said he did not recall any physical contact. The Harveys testified that the letter to the editor was discussed. They testified appellant accused Bruce Harvey of calling him a sex fiend, but that appellant said Bruce Harvey was the sex fiend, having married a woman half his age. They testified that appellant said they had better leave town as soon as school was out and that he was going to sue them and put a lien on their house. They testified that Bruce Harvey told appellant he was crazy and sick and needed help. Susan Harvey testified that appellant was shouting, and Bruce Harvey testified that appellant was loud and aggressive. They both testified that when they left the classroom and were in the hall, Bruce Harvey said to Susan Harvey, within hearing distance of appellant, "do you think the letter got to him," whereupon appellant said he would shoot them and that the shooting would be torture. Bruce Harvey said, "I believe you," and the incident ended. Bruce Harvey testified that during the incident he supposed he "was trying to needle Spurlock a little bit, and that's what I regretted later on because it wasn't a mature thing to do," that "I guess I was trying to get at him a little bit," and that he regretted losing his temper and "getting louder than usual" during the confrontation. Bruce Harvey testified that he believed it was "abnormal for a school administrator to react in such a fashion," and Susan Harvey testified that she considered appellant's language to be "very unprofessional." The Harveys estimated the confrontation to have lasted 10 to 15 minutes.

Appellant testified that he went to the room in an effort to persuade the Harveys to "back off" in their animosity toward him, but it "blew up" on him. He testified that Bruce Harvey said it was 4:00 o'clock and he was going home, and that Bruce Harvey pushed him on the shoulder. Appellant said "Bruce, don't lay another hand on me," whereupon Bruce said they didn't have to listen and both Harveys went to the desks and sat down. He testified that the letter to the editor was discussed, that Bruce Harvey accused him of being sick and crazy and having been run out of Georgia, and that he accused the Harveys of calling him a sex fiend. He testified that he told Bruce Harvey that if anyone was "kinky" he was for marrying a woman half his age. He acknowledged threatening to sue the Harveys after the school year ended and denied that he told them to leave town. When Bruce Harvey said he wanted to go home, appellant testified that he said "fine" and left the room. He testified that after they went into the hall Bruce Harvey said "I got to him. That letter got to him that time," and when appellant turned around, Bruce Harvey said, "you're crazy * * * you're liable to shoot somebody," to which appellant responded, "if I shoot you, I'll shoot you to torture you." He estimated the confrontation to have lasted for about five minutes.

On May 27, 1982, the chairman of appellee advised appellant by letter that there would be a hearing on June 8, 1982. The letter recited in pertinent part:

"This letter is written notice to you of the initiation of hearing proceedings involving you, together with the written reasons giving rise to such hearing.

"The reasons for the initiation of the hearing proceedings involving you are your actions on May 5, 1982, at Morrow School in Baggs, Wyoming, at which time and place you initiated a confrontation with Mr. Bruce Harvey and Mrs. Susan Harvey, teachers at the school. Attached hereto is a copy of Mr. Richard Colson's written report of his investigation of the confrontation."

Mr. Colson was an assistant superintendent of appellee. His one page report reflected an interview with Bruce Harvey in which Mr. Harvey related in summary form substantially that to which he later testified. It also reflected an interview with appellant in which appellant said he did not feel he had done anything wrong, and that they both made statements they probably should not have made. He said he had purposely overlooked acts by the Harveys so the school year could end without any more disruption. The report related that some faculty members "made the same observation on behalf of Spurlock." The testimony recited supra was received at the hearing.

As a result of the hearing, the appellee, by a four-to-two vote decided

" * * * that Mr. W. Nyles Spurlock, be, and he is hereby immediately discharged and dismissed from his position as principal of Morrow School, and his contract of employment, be, and it is hereby immediately cancelled."

On petition by appellant to review the Board's action, the district court remanded the matter to appellee on March 14, 1983,

" * * * to take such additional evidence as may be appropriate relating to the status of W. Nyles Spurlock as a continuing contract teacher and such other matters relevant thereto."

The order was pursuant to a stipulation of counsel which noted that evidence was not received at the original proceedings concerning appellant's status as a continuing contract teacher and that the remand would be for the purpose of reviewing such evidence.

At the second hearing on June 9, 1983, documentary evidence was received relative to appellant's teaching contract with appellee and to his having maintained his teaching certification with the state. No other evidence was presented. Counsel and the members of appellee discussed the damages suffered by appellant and to be paid by appellee for the time he had not worked if tenure existed. Appellee's counsel contended that even if tenure existed, the evidence of the first hearing was suffi-

cient to cause discharge of appellant from his teaching position as well as from his principal position.

On July 28, 1983, appellee issued its decision in which it held that appellant

" * * * enjoyed no tenured status with the District. However, even if he held tenure status, the events surrounding his termination as a principal justify his termination as a teacher as well."

Section 21-7-110, W.S.1977 (part of the Wyoming Teacher Employment Law) provides:

"(a) The board may suspend or dismiss any teacher for incompetency, neglect of duty, immorality, insubordination, or any other good or just cause.

"(b) *Written notice.*—Suspension or dismissal proceedings shall be initiated by the superintendent or any member of the board delivering to the teacher a written notice thereof, *together with written reasons therefor.*

"(c) *Hearing.*—Every teacher who has dismissal or suspension proceedings instituted against him shall have a hearing before the board on the reasons for such dismissal or suspension, unless such hearing is waived in writing by the teacher.

"(i) The hearing shall be conducted before the board and shall be held not less than ten (10) nor more than thirty (30) days after the date of initiation of such dismissal or suspension proceedings. Written notice of the time and place of said hearing shall be delivered to the teacher at least ten (10) days prior thereto.

"(ii) At any such hearing conducted by the board, the teacher shall have the right to appear in person with or without counsel; shall have the right to be heard and to present testimony or witnesses and other evidence bearing upon the reasons for the proposed dismissal or suspension; and shall have the right to cross-examine witnesses at the hearing. No testimony shall be received from a witness except under oath or affirmation, which may be ad-

ministered by any member of the board of trustees. The board shall make provisions for the recording of all evidence and testimony presented at the hearings, and such record shall be retained in the minutes of the board as a public record for a period of five (5) years after the date of said hearing.

"(d) *Majority of board.*—Any action resulting in the teacher's suspension or dismissal shall be approved by a majority of the duly elected members of the board of trustees."

The confrontation upon which the discharge was based did not concern appellant's incompetency, neglect of duty, immorality, or insubordination as a teacher. Therefore, the only basis for discharge would be "any other good or just cause."

Appellee made findings of fact and conclusions of law after the first hearing and supplemental findings of fact and conclusions of law after the second hearing. Although the second hearing was restricted to evidence concerning appellant's status as a tenured teacher, the supplemental findings of fact and conclusions of law generally repeated that said in the original findings of fact and conclusions of law. They referred to general school policies and goals to develop "in students * * * an understanding and appreciation for the democratic form of government and for the rights and responsibilities of the individuals"; that all individuals, "students and teachers alike, * * * enjoy full rights of citizenship as provided in the First Amendment"; that "freedom of speech is entitled to comprehensive protection"; that a "teacher has the right to criticize his or her employers"; and that "teachers cannot be the victims of retaliation and threats from either administrators or boards of education for exercising constitutional rights," etc.

Neither in the notice of the original hearing nor in the findings of fact and conclusions of law are there specified particular rules or regulations of the school district alleged or found to be violated. The findings of fact and conclusions of law reflect

that appellant was found to have interfered with the Harveys' freedom of speech rights.

Of course, that which immediately comes to mind is the question as to whether or not *appellant's* right of freedom of speech is being invaded by discharging him for speaking as he wished to the Harveys. It is this type of circumstance in which these teacher-discharge cases usually come to us. The discharged teacher complains because the school district or its agents are not respecting that teacher's right to free speech, e.g., *Board of Trustees, Laramie County School District No. 1 v. Spiegel,* Wyo., 549 P.2d 1161 (1976). Of course, the misuse of free speech between individual teachers or administrators may result in a defamation action, but such is a private matter in which a school district is not involved. The district would be involved only if it interfered with the free speech by discharge or otherwise.

The findings of fact and conclusions of law allude to the effect of the confrontation on students, but there is no evidence whatsoever that any student had knowledge of the incident. We recognize the ease in which the most insignificant confrontation or occurrence, let alone one involving teachers or public officials, is soon made known to everyone in a community the size of Baggs (1980 census, 433), but there must be some evidentiary showing of the knowledge by, and effect on, students if such is made the basis for action under § 21–7–110(a), W.S.1977, supra.

The original findings of fact and conclusions of law do not refer to appellant's teaching status. They continually refer to his administrative status. For example, they recite:

"His behavior and conduct demonstrates that he is unable to supervise properly his teaching staff * * *."

"Such conduct and behavior on behalf of the school principal demonstrates that he lacks necessary qualities, including the qualities of competence and the quality of good judgment required for the

management and the educational leadership of his assigned attendance center."

"Mr. Spurlock's behavior and conduct demonstrates a substantial shortcoming in his educational leadership, and displays bad judgment in such a nature that it renders his continuance in the office of principal as detrimental to the discipline and efficiency of that position."

The supplemental findings of fact and conclusions of law again refer to the right of freedom of speech and conclude that "[t]eachers must respect and protect, not extinguish and inhibit, a fellow teacher's right to express ideas," and apply the requirement to appellant without consideration of his right to freedom of speech when talking to the Harveys.

Both the original and the supplemental findings of fact and conclusions of law contain a conclusion that:

"His conduct of standing in the doorway in such a manner as to block Mr. and Mrs. Harvey's exit of the classroom during their off-hours demonstrates an attempt to abridge Mr. and Mrs. Harvey's freedom of movement rights under the federal and state constitutions."

Although the evidence was in conflict on the nature and extent of the restraint by appellant of the Harveys, there was evidence to support appellee's finding that such occurred. Again, however, the question is presented as to how much control should a school district have over private actions of its school teachers after school hours. Only Mr. and Mrs. Harvey and appellant were present. The Harveys have the privilege of instituting criminal and civil proceedings for false imprisonment. There is certainly a point at which a school district should be concerned with after hours antagonistic situations between its teachers, but a five- to fifteen-minute argument during which accusations were exchanged even with one of the participants standing in the only exit would seem to be less than "good and just cause" for discharge.

The notice of the hearing, the original hearing itself, and the original findings of fact and conclusions of law taken separate-

ly or in total do not pertain to appellant's position as a tenured classroom teacher. They specifically address themselves to his position as principal. When the district judge evidenced his concern for this fact, the question arose as to whether or not appellant was a tenured teacher, and the matter was remanded to appellee for the receipt of documentary evidence on this issue. Appellee then made the contention that even if appellant were a tenured teacher sufficient evidence was presented at the original hearing to warrant his dismissal from such position. Supplemental findings of fact and conclusions of law were made to buttress this position. Not only were such supplemental findings of fact and conclusions of law beyond that for which the matter was remanded, but they do not reflect that which would be sufficiently substantial evidence for discharge of a tenured teacher.

The supplemental findings of fact and conclusions of law fit into that which is condemned in *Monahan v. Board of Trustees of Elementary School District No. 9, County of Fremont*, Wyo., 486 P.2d 235, 237 (1971):

> " * * * Although such a hearing was conducted April 10, 1969, it is clear from the record as a whole, from the statement of counsel at the hearing, and even from the admission of appellee's attorney in oral argument to us that Monahan did not have a bona fide hearing to determine whether there was just cause for his termination. Instead, the hearing was nothing more than an exercise engaged in for the sole purpose of making a record which could make legal and justifiable the decision which the board had already made prior to the hearing."

That which is "good or just cause" was carefully analyzed in *Powell v. Board of Trustees of Crook County School District No. 1, Crook County*, Wyo., 550 P.2d 1112 (1976). It was there said at pages 1118 and 1119:

> "We make one final observation concerning the 'good cause' facts necessary to support the discharge of a teacher.

'Good cause' cannot be just any reason that the Board deems sufficient for the discharge of the teacher. We have held in *Monahan v. Board of Trustees, etc., County of Fremont*, Wyo., 486 P.2d 235, 237:

> " 'It becomes clear then, from what we have said, that a hearing on termination of a continuing contract teacher involves the question of whether there is good cause for termination. There must not only be good cause but there must be substantial evidence before the board to show that there is good cause. Absent either, a decision on the part of the board to terminate will be arbitrary.'

> \*       \*       \*       \*       \*       \*

> "Therefore, it is the decision of this court that the 'good cause' to which the statute refers when the term 'any other good or just cause' is used in §· 21.1–160, W.S. 1957, 1975 Cum.Supp., or when good cause is contemplated as discussed in Monahan, supra, these terms assume facts which bear a relationnship [sic] to the teacher's ability and fitness to teach and discharge the duties of his or her position."

The evidence placed before the Board in the original hearing and in the supplemental hearing bears no relationship to appellant's ability and fitness to teach and discharge the duties of a classroom teacher.

■ Inasmuch as the original notice was insufficient to advise appellant of the standard, rule, or regulation he was alleged to have violated, and inasmuch as the hearing was not with reference to his classroom teacher tenured status, and inasmuch as there was not substantial evidence presented at the hearing to reflect "good or just cause" for appellant's discharge as a classroom teacher, we reverse the holding of the appellee and of the district court that appellant was properly discharged from his position of classroom teacher.

Affirmed as to the dismissal of appellant from the position of principal and reversed as to the dismissal of appellant from the position of tenured classroom teacher.