W. Nyles SPURLOCK,
Appellant (Plaintiff),

v.

Jean ELY, Fran Everson, Mary Fleming, Connie Foster, Daryl Garvin, Frederick J. Harrison, Bruce Harvey, Kathy McCracken, Mary Morehouse, Juana Morse, Doe I, and Doe II, Appellees (Defendants),

Anna Mae Adams and Lois Wren, (Defendants).

No. 83–260.

Supreme Court of Wyoming.

Oct. 17, 1985.

C.M. Aron and Sid L. Moller, Aron & Hennig, Laramie, for appellant.

Bernard Q. Phelan, William M. McKellar, Lathrop & Uchner, and William Walton, Cheyenne, for appellees.

Before THOMAS,* C.J., and ROSE, ROONEY,** BROWN and CARDINE, JJ.

ROONEY, Justice.[1]

W. Nyles Spurlock, a former school principal, brought an action against appellees for intentional interference with contractual relations and for intentional infliction of emotional distress. The district court granted summary judgment in favor of the appellees, former employees and parents of former students, holding that as a matter of law the information furnished to the school board by those persons did not cause the school board to discharge the principal and holding that the claim for intentional infliction of emotional distress, being dependent upon recovery on the claim for malicious interference with the principal's contract, must fail. Spurlock challenges both rulings. We affirm.

Appellant is the former principal of Morrow School, the high school in Baggs, Wyoming, and was employed by Carbon County School District No. 1. All the appellees save Harrison are individual parents, students and teachers who addressed com-

plaints against appellant to the board of trustees of that district. Harrison is the attorney who represented the rest of the appellees in bringing their complaints to the attention of the board.

Acting as the group's attorney, Harrison wrote to the school board on September 2, 1981, concerning the allegations against appellant. On December 11, 1981, the board notified the appellees that a hearing concerning appellant's fitness to function as a principal would be held. That hearing began on March 29, 1982, before hearing officer Ford T. Bussart and continued for five days. Based upon his findings of fact and conclusions of law, Bussart recommended to the board that they terminate appellant. Inter alia, Bussart found many of the allegations against appellant harmless or insubstantial; others, unfounded. However, he found two allegations serious enough to justify termination. The board, however, rejected Bussart's recommendation and did not discharge appellant.

Meanwhile appellant was involved in an altercation with two teachers on May 5, 1982. The details of this incident are fully set forth in *Spurlock v. Board of Trustees, Carbon County School District No. 1*, Wyo., 699 P.2d 270 (1985). A separate proceeding before the board based on this incident was initiated on May 27, 1982. A hearing in that matter was held June 23 and 24, 1982. On August 12, 1982, the board issued findings of fact and conclusions of law supporting its determination to discharge appellant based on the May 5 incident.

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

A summary judgment

" * * * shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

---

* Became Chief Justice on January 1, 1985.

** Chief Justice at time of oral argument.

1. This opinion was originally assigned to Chief Justice Thomas on May 29, 1984 for the rendering of a proffered majority opinion. No such

opinion being forthcoming, it was reassigned to Justice Rooney on July 30, 1985. Justice Rooney distributed a proffered opinion to the court on August 5, 1985. Justice Rose distributed his dissenting opinion to the court on October 8, 1985.

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * " Rule 56(c), W.R.C.P.

Appellant argues the determination of the cause of his discharge from employment is an issue of fact which precludes summary judgment. Causation is a material element in a claim for intentional interference with contractual relations. If the cause is disputed, it is an issue of fact. Restatement (Second) of Torts, § 766, comment o. But of course if there is no genuine issue as to causation, a summary judgment is not thereby precluded.

█ This court has recognized an action for intentional interference with contractual relations is allowable. *Wartensleben v. Willey*, Wyo., 415 P.2d 613, 614 (1966), citing 4 Restatement, Torts, § 766, p. 49 (1939). Also see *Kvenild v. Taylor*, Wyo., 594 P.2d 972 (1979); *Board of Trustees of Weston County School District No. 1 v. Holso*, Wyo., 584 P.2d 1009, *reh. denied* 587 P.2d 203 (1978). The defendant can be held liable, however, only if he causes the loss. Prosser & Keeton, Torts, § 129, p. 989 (5th ed. 1984); *Ethyl Corporation v. Balter*, Fla.App., 386 So.2d 1220, *cert. denied* 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981); *Seaway Yacht Sales, Inc. v. Brunswick Corporation*, Fla.App., 242 So.2d 192 (1970); See also *Lingard v. Kiraly*, Fla.App., 110 So.2d 715, 717 (1959) (plaintiff must establish by evidence that the employment was terminated because of the defendant's acts). We agree with the Pennsylvania Court's analogy:

"* * * An action for interference with another's contract is, in a way, analogous to the old action for alienation of affections, in which, of course, there was no liability if the affections, though lost, were not alienated by the alleged tortfeasor." *Wahl v. Strous*, 344 Pa. 402, 25 A.2d 820, 822 (1942).

█ In support of their motion for summary judgment, appellees presented a memorandum and a number of affidavits and depositions which bore upon the causation issue. The affidavits of Frederick J. Harrison, Jean Ely, a parent, and Ford T. Bussart, the hearing officer, indicated that the board had refused to accept Bussart's recommendation of dismissal. The affidavits of T. Michael Golden, the attorney for the school district, and William E. Scoggin, a member of the board of trustees, indicated that the board had ruled in favor of appellant on the Bussart hearing but had terminated him for a separate May 5 incident. The appellees also presented excerpts from depositions taken in another suit involving some of the same parties. The partial deposition of Clark Hull, a board member, stated that appellant was not terminated for the Bussart hearing allegations but rather because of the May 5 incident. The depositions of Sue Williams and Katherine Morehead, board members, indicated that the two incidents were kept separate. The deposition of Bruce Harvey, describing the May 5 incident, was included in the record. The appellees also presented as exhibits the findings of fact and conclusions of law of hearing officer Ford T. Bussart, as well as the findings of fact and conclusions of law of the board of trustees dated August 12, wherein appellant was terminated for the May 5 incident.

In opposition to all of this appellant filed a memorandum of points and authorities, but he filed no counter-affidavits, nor excerpts from the depositions of board members, which might have supported his belief that they did in fact rely in part on the charges appellees had levied against him. The only potential for creating an issue of fact with reference to the cause of discharge is appellant's deposition, and it is unclear from the record whether that was even before the trial judge.[2] Nonetheless

---

2. At the hearing on the summary judgment motion plaintiff's attorney indicated that the deposition was not yet filed because it had not been signed. In fact it is not yet signed before this court. The district court docket shows no entry for the Spurlock deposition prior to the order granting summary judgment, and the deposition did not reach this court until some three months after the main record on appeal was filed.

a careful perusal of the deposition reveals only the following of possible pertinence: "I was dismissed for this whole thing leading up to it." He bases this conclusion on "human nature" and the fact that the "Board is human." He claims he was fired on a "technicality." He makes the bald assertion that the defendants succeeded in getting him fired. He did not believe that the May 5 incident was enough to be fired for; therefore, he concluded that the board must have been influenced in their decision by the other allegations.

Rule 56(e), W.R.C.P., provides in pertinent part:

" * * * When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule [depositions], *must set forth specific facts* showing that there is a genuine issue for trial. If he does not so respond summary judgment, if appropriate, shall be entered against him." (Emphasis added.)

Even if the deposition was properly before the trial judge when he considered the motion for summary judgment, the conclusory nature of the deposition testimony falls short of the specific facts necessary to raise a genuine issue of material fact. Appellant would have this court decide that inferences contrary to the affidavits and depositions of the defendants are sufficient to raise an issue of fact. We recognized in *Blackmore v. Davis Oil Company*, Wyo., 671 P.2d 334 (1983), that even though we must consider the record in the light most favorable to the party opposing the motion for summary judgment and give him all favorable inferences to be drawn from the facts, any inferences drawn must be based on facts in the record. "[A]n inference which is contrary to direct testimony is insufficient to support a finding that a genuine issue of material fact exists," 671 P.2d at 337, citing *Forbes Company v. MacNeel*, Wyo., 382 P.2d 56 (1963). Therefore, because appellant failed to show any specific

facts raising a genuine issue of material fact as to the cause of his termination, summary judgment on the claim, intentional interference with contractual relations, was proper.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The parties and the court treated the claim of intentional infliction of emotional distress in this case as parasitic to the claim for intentional interference with contractual relations, and thus, when the host action failed, the claim for intentional infliction of emotional distress also failed. In connection with an argument on motions, the following was said (Mr. Aron is appellant's attorney):

"THE COURT: * * * My concern is the factual material. I don't have a feeling for this, whether or not there are still factual issues to be resolved. And I'm not willing to say there aren't.

"So, I'm saying if I decide its a factual matter, that there are factual issues to be resolved, and we're talking about this issue where it's conceded if the statement—Well, if the ruling by the board is conclusive, in other words, if you can't look behind that ruling, then I think it becomes a matter of law, if the Court holds in that direction. And we're not even concerned with the fact issue, and all the evidence in the world isn't going to make much difference.

"MR. ARON: I think that's correct, Your Honor. *In fact, that would dispose of the entire case.* So it's a very significant issue because clearly there could not have been anything other than —Well, I guess conceivably there could be intentional infliction of emotional distress, but we did want to at least re-evaluate the case if that were the Court's holding." (Emphasis added.)

Even if the trial court was not misled by appellant into understanding that the theory of appellant's claim for intentional infliction of emotional distress was a parasite to the claim of intentional interference with contractual relations, the nature and facts

of this case would make it one in which it is unnecessary and impractical to address the factors and ramifications of the tort of intentional infliction of emotional distress as an independent action.

We have not yet recognized and set the perimeters for an independent action of intentional infliction of emotional distress or for an independent action of negligent infliction of emotional distress.[3] The pleadings, affidavits and depositions before the court fortify appellant's representation that the claim of intentional infliction of emotional distress is but an adjunct to the claim for intentional interference with contractual relations. The material before the court reflects that appellees' efforts to obtain a termination of appellant's position with the school district were premised upon alleged incidents in which appellant made uninvited sexual advances to a female school librarian and to a teacher; in which he questioned two female students about their personal life and sexual activities; in which he administered excessive physical punishment to students on four separate occasions; in which he administered improper medical treatment to students on seven separate occasions (ranging from extracting a piece of pencil lead from an arm with a pocket knife to manipulating an arm and wrist subsequently found to have been broken); in which he allowed and offered to allow fist fights between students to settle differences; in which he refused to accept a report from a physician's assistant that a student was over chicken pox and could return to school; and in which he refused to allow a certain commencement speaker because he was black.

When allegations such as these are presented to the school board, the trial court could properly find that the presentation was not "outrageous," especially since § 21-3-110(a), W.S.1977, provides in pertinent part:

"(a) The board of trustees in each school district shall:

"*    *    *    *    *    *

"(xiii) Consider every petition presented to the board and subscribed by at least five (5) citizens of the school district and take some action on such petition within thirty (30) days after it is received * * *.''

The nature of the acts alleged to be "outrageous" were before the court. Restatement (Second) of Torts, § 46, reads in pertinent part:

"(1) One who by extreme and outrageous conduct intentionally or recklessly [4] causes severe emotional distress to another is subject to liability for such emotional distress * * *.''

The Comment to § 46 contains the following:

"d. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"*    *    *    *    *    *

---

**3.** We have recognized mental injury under certain circumstances is compensable under the statutory provisions of the Worker's Compensation Act. *Consolidated Freightways v. Drake,* Wyo., 678 P.2d 874 (1984); *Baker v. Wendy's of Montana, Inc.,* Wyo., 687 P.2d 885 (1984).

**4.** The Restatement addresses negligent infliction of emotional distress in §§ 312, 313, 436 and 436 A.

"g. The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress. * * *

"h. *Court and jury.* It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."

The matter here before the court for consideration of a summary judgment was such that it could decide in the first instance that the essential element of "outrage" could not reasonably be established, that appellees' actions were privileged, and that the claim was parasitic in nature. The summary judgment is proper.

Our holding in this case must not be taken to say that the independent claim for intentional infliction of emotional distress does not exist in Wyoming or that it can exist only when there is no host claim for relief. Such decisions will wait a case in which these issues are not encumbered by facts and circumstances such as are in this case.

Affirmed.

ROSE, Justice, dissenting.

I cannot agree with the majority that appellant failed to structure a triable question of fact with respect to his claim for intentional infliction of emotional distress.

Appellant complains that he suffered severe emotional distress as a result of the false and insubstantial allegations presented by appellees to his employer, the school district, for the purpose of humiliating him and interfering with his ability to perform his duties as high school principal. Appellant seeks to recover damages for such conduct pursuant to § 46(1) of the Restatement of the Law, Torts 2d (1965). That section provides:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

The majority, in affirming the summary judgment entered against appellant, hold that no jury of reasonable persons could conclude that appellees' actions were extreme and outrageous.

The evidence before the court in the form of affidavits, depositions, exhibits, and pleadings establishes that appellees made numerous charges to the school board concerning appellant's interactions with teachers, staff and students. Many of these allegations are summarized in the majority opinion. Other charges brought by appellees against appellant include his making sexual overtures to a student; examining the back of a female student while she was unclad above the waist; ordering teachers to strip-search students; committing assault and battery on a spectator at a basketball game; violating hunting regulations; and harassing and embarrassing students. These alleged incidents span a period of ten years.

Appellant, in his deposition and complaint, contends that the charges against him were distorted or false and were presented to the school board in an effort to embarrass him and interfere with his work. He says that appellees repeatedly raised accusations which the school board had previously considered and found to be trivial or without merit. He complains that appellees publicized numerous trivial accusations against him in order to create a false impression of improper conduct. Appellant asserts that these actions by appellees caused him to suffer severe emotional distress.

Courts in other jurisdictions have recognized claims for intentional infliction of emotional distress based on the defendants' improper comments and allegations in the context of employment relationships. In *Contreras v. Crown Zellerbach Corporation*, 88 Wash.2d 735, 565 P.2d 1173 (1977), the plaintiff alleged that during his employment he was continuously humiliated and embarrassed by the racial jokes and slurs made in his presence by his employer's agents and employees. He further alleged that these individuals had wrongfully accused him of stealing corporate property, thereby subjecting him to public scorn and a denial of employment. The trial court dismissed the claim for failure to state grounds for relief. The Supreme Court of Washington reversed, saying:

> " * * * It is for the trier of fact to determine, taking into account changing social conditions and plaintiff's own susceptibility, whether the particular conduct was sufficient to constitute extreme outrage." 565 P.2d at 1177.

Analyzing similar facts, the California Supreme Court in *Agarwal v. Johnson*, 25 Cal.3d 932, 160 Cal.Rptr. 141, 603 P.2d 58 (1979), upheld a jury's finding of outrageous conduct. There the defendants had recommended the plaintiff's dismissal for erroneous reasons and had attempted to humiliate him through the use of racial epithets and the assignment of demeaning tasks. See also *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3rd Cir. 1979).

In view of the foregoing authorities, I am unable to understand how the majority can conclude, as a matter of law, that the conduct of which appellant complains is not "outrageous." This question is for the finder of fact after full development of the evidence—not for this court upon review of summary judgment. Furthermore, I cannot agree that such conduct, if established as appellant contends, is privileged. To assert a privilege, a party must have acted "in a permissible way." Restatement of the Law, Torts 2d, § 46, comment g. I would have remanded for a trial on the issue of whether appellees' presentations to the school board constituted extreme and outrageous behavior.