BERTHOLD HUEBENER, Appellant-Respondent, v KENYON & ECKHARDT, INC., et al., Respondents, and KENNETH DUSKIN, Respondent-Appellant.

First Department, December 1, 1988

**APPEARANCES OF COUNSEL**

*Thomas M. Kennedy* of counsel *(Jill Bernstein* with him on

the brief; *Lewis, Greenwald, Kennedy & Lewis, P. C.,* attorneys), for appellant-respondent.

*Michael P. Zweig* of counsel *(John C. Hearn* with him on the brief; *Loeb & Loeb,* attorneys), for respondents.

*Alan R. Kaufman* of counsel *(Don D. Buchwald* and *James M. Keneally* with him on the brief; *Buchwald & Kaufman,* attorneys), for respondent-appellant.

### OPINION OF THE COURT

Per Curiam.

The plaintiff, Berthold Huebener, was first employed by Kenyon & Eckhardt, Inc. (Kenyon), an advertising agency, in or about 1966, and after a brief break in his employment between 1973 and 1975, rejoined the firm in 1975 as an art director. In 1982 plaintiff received an offer of employment from another advertising agency at a higher salary. He informed his immediate superior of the offer and of his intention to accept it. Thereafter, at a meeting with Kenyon's chief executive officer, plaintiff, according to the allegations of the complaint, which though disputed must be accepted as true on this appeal, was offered a $10,000 salary increase, a promise of continued employment "until plaintiff's retirement", and a consulting arrangement after plaintiff's retirement, in exchange for his promise to continue in Kenyon's employ until his retirement. As supplemented by plaintiff's affidavit in opposition to the motion of the corporate defendants to dismiss, he "agreed to remain at Kenyon until retirement".

Plaintiff was discharged in 1985. As set forth in the complaint, his dismissal occurred under the following circumstances. In the course of an assignment requiring the use of a color lab, and at the recommendation of the photo retoucher on that assignment, plaintiff directed that a certain color lab be retained. The individual defendant Kenneth Duskin, who held the position of executive vice-president, creative director, and who was in charge of the working group in which plaintiff worked, ordered plaintiff to use the service of another color lab, and directed that it be billed through the corporate defendant Kenyon.

The complaint alleges that it would not be the normal function of someone in Mr. Duskin's position to be concerned with the designation of a color lab for a particular assignment. The complaint further alleges that all employees in

Duskin's working group were required to use the services of this particular color lab, and that other employees in the working group "believed that Duskin was receiving remuneration from said color lab for directing the business of his working group to said color lab." Plaintiff asserts that he objected to Duskin's directions, that his assignments were thereafter reduced to eliminate any requiring use of a color lab, and that "[u]pon information and belief", Duskin thereafter advised the termination of his employment.

The complaint set forth three causes of action, the first alleging breach of contract against Kenyon, the second similarly alleging breach of contract against Kenyon's successor corporation, and the third against the individual defendant Duskin alleging tortious interference with plaintiff's employment agreement. The corporate defendants moved to dismiss the first two causes of action pursuant to CPLR 3211 (a) (5) and (7), or alternatively, for summary judgment pursuant to CPLR 3212, on the ground that the causes of action were barred by the New York Statute of Frauds. The individual defendant Duskin separately moved for an order pursuant to CPLR 3211 (a) (5) and (7) dismissing the complaint on the ground that the pleadings failed to state a cause of action against him.

In a thoughtful opinion the IAS court granted the motion to dismiss the first two causes of action as barred by the Statute of Frauds and denied the motion to dismiss the third cause of action. We agree with that part of the court's determination that dismissed the first two causes of action as barred by the Statute of Frauds, although, on what seems to us the more probably correct interpretation of the oral agreement alleged—an interpretation not explicitly presented by plaintiff and which the IAS court understandably did not address—an issue is presented with regard to the application of the Statute of Frauds as to which the law in this State is not entirely clear.

As to the denial of the motion to dismiss the third cause of action against the individual defendant, we are persuaded that the allegations of the complaint are insufficient to bring that cause of action within the narrow exception to the general rule that an action for tortious breach of contract does not lie against a corporate executive acting within the scope of his authority and responsibility whose actions are alleged to have resulted in a breach of contract. A fortiori we are persuaded that such a cause of action was not stated with

regard to an alleged breach of contract which, as we find, was not enforceable as barred by the Statute of Frauds.

Turning to the first two causes of action alleging a breach of an oral agreement of employment, the New York Statute of Frauds (General Obligations Law § 5-701 [a]), provides in pertinent part:

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

"1. By its terms is not to be performed within one year from the making thereof".

In *D & N Boening v Kirsch Beverages* (63 NY2d 449), perhaps the most authoritative recent Court of Appeals statement of the guiding principles applicable to this section, the court's opinion, following a general review of the one-year provision of the Statute of Frauds and a summary of the somewhat complicated history of its interpretation, concluded (at 454) that the courts "have limited it to those contracts only which by their very terms have absolutely no possibility in fact and law of full performance within one year."

In determining that the oral agreement alleged in the complaint was barred by the Statute of Frauds, the IAS court interpreted the promise to employ plaintiff "until retirement" as having been intended to incorporate the relevant retirement provisions of Kenyon's written Standard Policy and Procedure, whose stated purpose was "compliance with the Age Discrimination in Employment Act Amendments of 1978", and provided that normal retirement age was 70, with the limited exception that certain "bona fide executives" may be retired at age 65. Since plaintiff was 51 at the time of the oral agreement, the court concluded that it was not possible for the corporate defendant to retire plaintiff within one year from the making of the agreement. We are essentially in agreement with this aspect of the court's opinion. However, it seems to us unlikely that plaintiff's corresponding promise to work until retirement was intended to commit the plaintiff to continue to work for Kenyon until he was 70, an agreement that would certainly be an unusual one for a 51-year-old person, and which it is doubtful that the corporate defendant intended to exact as part of the claimed arrangement. The doubtful character of such an interpretation is underlined by the allegation that the corporate defendant agreed to retain

plaintiff on a consulting basis after plaintiff's retirement. In short, it seems to us the more probably correct interpretation of the agreement that Kenyon agreed to retain plaintiff until retirement in accordance with its written policy, and that plaintiff agreed only that he would work for Kenyon until he retired, in the more usual meaning of that term. Since it was possible, even though unlikely, for plaintiff to retire within one year, the contract to that extent was possible of performance within that period.

Under this construction of the agreement, the legal question presented is whether the New York Statute of Frauds bars an oral agreement which is terminable within one year only by the party that seeks to enforce the agreement. The issue is one that has given rise to some diversity of opinion. Thus, in his authoritative work on Contracts (vol 2, 1950 ed), Corbin observed with regard to such an agreement, in section 449: "[s]uch a contract as this should be held not within the one-year clause, but a good many cases take the contrary view." On the other hand, the Restatement (Second) of Contracts § 130, comment a, illustration 7, appears quite clearly to take the view that a contract terminable by one, but not the other party, is barred by the statute.

Analysis of the law in this State appropriately starts with this court's decision in *Harris v Home Indem. Co.* (6 AD2d 861). Referring preliminarily to the rule in *Blake v Voigt* (134 NY 69), which had held that a contract terminable by both parties was not barred by the Statute of Frauds, this court's opinion said: "The rule in *Blake* v. *Voight* (134 N. Y. 69) should not be extended to make enforceable an oral agreement for permanent employment, where the right to cancel or terminate is limited unilaterally to plaintiff. For in such cases defendant's liability endures indefinitely, subject only to the uncontrolled voluntary act of the party who seeks to hold defendant. Under such circumstances it is illusory, from the point of view of defendant, to consider the contract terminable or performable within one year. And it is to the party to be charged, alone, namely the defendant, that the statute is designed to provide protection from fraud and perjury. In so holding it is recognized that the authorities and the rationale there developed have rarely, if ever, been concerned with the precise application now presented" *(supra, 6 AD2d, at 861).*

The principle set forth in *Harris (supra)* was reaffirmed by this court in a case affirmed by the Court of Appeals *(Belfert v Peoples Planning Corp.,* 22 Misc 2d 753, *affd* 11 AD2d 760, *affd*

11 NY2d 755). Although the Court of Appeals affirmed in *Belfert* without opinion, the meaning of the affirmance was unmistakably set forth in *North Shore Bottling Co. v Schmidt & Sons* (22 NY2d 171) in footnote 3 on page 177, in which the court described the decision in *Belfert* as holding an agreement within the statute "where option to terminate was *solely* in plaintiff, the party seeking to enforce the agreement, and not in the party to be charged."

The *Belfert* decision as clarified in *North Shore Bottling (supra)* would appear to be dispositive of the issue presented on the construction of the agreement that we find most reasonable except for aspects of more recent Court of Appeals opinions in *Weiner v McGraw-Hill, Inc.* (57 NY2d 458, 463) and *D & N Boening v Kirsch Beverages* (63 NY2d 449, *supra)* which at least arguably raise a question as to the current status of the *Belfert* rule.

In *Weiner (supra),* a case primarily concerning whether or not the agreement as alleged in the complaint was at will, the Court of Appeals preliminarily and briefly discussed the Statute of Frauds, noting that it had been thought pertinent by Special Term although not raised by the defendant. In its brief discussion of the issue, clearly preparatory to an analysis of the principal issue raised, the court's opinion appears to have found that an agreement terminable by one party would not be barred by the Statute of Frauds. Although the question presented for our purposes by this aspect of *Weiner* is troublesome, we are not persuaded that in its brief discussion of an issue that had not been raised by the parties, and apparently had not been briefed, the court intended to alter the rule set forth in *Belfert (supra)* without any reference to that decision and any clear signal that the court intended to overrule that precedent.

Similarly, in *D & N Boening v Kirsch Beverages* (63 NY2d 449, *supra),* once again a case in which the issue before us was not presented by the facts, but in which the court undertook in support of the conclusion reached a broad review of the rules governing interpretation of the one-year Statute of Frauds, language was used which on its face appears contrary to the rule set forth in *Belfert.* Thus, at page 456, the court said: "Where one or both parties have such an explicit option to terminate their agreement within one year, that agreement is, by its own terms, capable of completion within that period and is not governed by the Statute."

Significantly, in distinction to other rules set forth in its review of the existing authorities, this sentence is not followed by any citation of authority. However, shortly thereafter, and in the same paragraph, the court quoted from *Blake v Voigt (supra)* in which, as we have seen, both parties, including the party to be charged, had the power to terminate. Recognizing that we may be in error in our interpretation of the quoted language in *Boening,* and of comparable language at another point in the opinion *(see, supra,* 63 NY2d, at 457), we are inclined to believe that these observations by the Court of Appeals, in a broad review of New York law, were intended to be a paraphrase of the rule in *Blake v Voigt (supra)* in a case in which the issue here presented was not before the Court of Appeals, and in which it seems to us unlikely that the court, without saying so, intended to overrule its determination in *Belfert (supra).*

We find some support for this interpretation of *Boening (supra)* in *Ohanian v Avis Rent A Car Sys.* (779 F2d 101) in which the plaintiff employee relied on *Boening* for the proposition that a contract terminable by an employee at will, but not by the employer, is not barred by the Statute of Frauds, and in which that argument was implicitly rejected by the majority, which found the Statute of Frauds not applicable on a separate ground, and was explicitly rejected in a careful analysis of the New York authorities by the dissenting Judge.

■ Turning finally to the third cause of action alleging as against the individual defendant Duskin tortious interference with the plaintiff's claimed agreement of employment, we observe preliminarily that it seems to us doubtful that the allegations of the complaint would be sufficient to state such a cause of action even if we had found the employment agreement not to be barred by the Statute of Frauds. The rule applicable to an action against a corporate officer charged with inducing a breach of contract between the corporation and a third party was set forth by the Court of Appeals in *Murtha v Yonkers Child Care Assn.* (45 NY2d 913, 915). Quoting from an opinion of this court, the court said (at 915): " '[A] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer * * * [and did not commit] independent torts or predatory acts directed at another' *(Buckley v 112 Cent. Park South,* 285 App Div 331, 334)."

Giving to the allegations of the complaint the appropriate favorable interpretation required on a motion to dismiss, we are not persuaded that the complaint adequately sets forth facts bringing the claim within the narrowly limited exceptions to the rule set forth in *Murtha (supra)*. At best, the complaint alleges the suspicion of the plaintiff and other employees that Duskin might be receiving improper benefits from the company whose services he had directed those working within his working group to utilize. But the factual allegations in the complaint, even when considered together with the plaintiff's affidavit, seem to us at least equally consistent, if not more so, with the defendant's policy reflecting an honest business judgment. More than suspicion seems to us required to bring the case within the narrowly limited exception to the general rule set forth in *Murtha*, a rule that reflects a carefully considered policy judgment.

Moreover, as we have concluded, the oral agreement of employment which the defendant was alleged to have caused to have been breached was not enforceable under the Statute of Frauds. We think it unnecessary to determine whether an agreement unenforceable as violative of the Statute of Frauds is governed by precisely the same rule that applies to an agreement terminable at will in evaluating the merits of an action alleging tortious interference with a contractual or business relationship.

The applicable considerations in the two situations seem to us sufficiently close to make appropriate our consideration, at least as a matter of guidance, of the rules which have been developed in this State governing an action for tortious interference with a contractual arrangement that was terminable at will. In *Guard-Life Corp. v Parker Hardware Mfg. Corp.* (50 NY2d 183), the applicable rule with regard to contracts terminable at will was set forth in the following words (at 194): "Where contracts terminable at will have been involved, we have upheld complaints and recoveries in actions seeking damages for interference when the alleged means employed by the one interfering were wrongful, as consisting of fraudulent representations *(Rice v Manley,* 66 NY 82), or threats *(Lurie v New Amsterdam Cas. Co.,* 270 NY 379) or as in violation of a duty of fidelity owed to the plaintiff by the defendant by reason of a relation of confidence existing between them *(A.S. Rampell, Inc. v Hyster Co.,* 3 NY2d 369; *Duane Jones Co. v Burke,* 306 NY 172). Absent some such misconduct, no liability has resulted to one whose actions

have induced nonperformance of a contract deemed to be voidable and thus unenforceable *(Livoti v Elston,* 52 AD2d 444)."

It would require a strained reading of the allegations of the complaint indeed to find that they sufficiently set forth language supporting a recovery under any of the narrowly defined circumstances permitting such recovery set forth in *Guard-Life (supra).*

Moreover, further support for finding legally insufficient the third cause of action seems to us implicit in those authorities which have rejected the concept of a tort theory of liability based on abusive or wrongful discharge. *(See, Murphy v American Home Prods. Corp.,* 58 NY2d 293; *Sabetay v Sterling Drug,* 69 NY2d 329.)* We think it unnecessary to determine whether or not the rejection of tort liability based upon abusive discharge necessarily requires rejection of an action against an individual corporate officer for tortious interference with an employment contract where it is alleged that such officer acted in pursuance of a private unlawful purpose. But as an examination of the opinions in *Murphy* and *Sabetay* makes clear, the concept of abusive discharge as a basis for tort liability was rejected in cases in which the allegations of misconduct by individual corporate executives were far more detailed and sweeping than those presented in this case, and would, clearly, under the thesis advanced by the plaintiff, have justified an action for tortious interference against one or more of the corporate employees.

It is at least open to question whether the rule set forth in those decisions may be circumvented by substituting individual corporate executives as the defendants and labelling the action as one for wrongful interference rather than one for abusive discharge. At a minimum the principles set forth in *Murphy* and *Sabetay (supra)* would appear to suggest judicial caution before sustaining the legal sufficiency of an action against a corporate executive for tortious interference with an employment agreement terminable at will or unenforceable under the Statute of Frauds.

Accordingly, the order and judgment of the Supreme Court, New York County (Beatrice Shainswit, J.), entered, respectively, on March 2, 1987 and April 2, 1987, in an action for breach of an employment contract and tortious interference with contractual arrangements, which granted the motion to dismiss the causes of action for breach of an employment

contract and denied the motion for tortious interference, should be modified, on the law, without costs, to grant the motion to dismiss the third cause of action alleging tortious interference, and should otherwise be affirmed.

Ross, J. P., KASSAL, ROSENBERGER and WALLACH, JJ., concur.

Order and judgment, Supreme Court, New York County, entered on March 2, 1987 and April 2, 1987, respectively, unanimously modified, on the law, without costs and without disbursements, to grant the motion to dismiss the third cause of action alleging tortious interference, and otherwise affirmed.