RUSSEL H. BEATIE, JR., Respondent, v ZOFIA B. DELONG et al., Appellants.

First Department, November 8, 1990

## APPEARANCES OF COUNSEL

*Dennis A. Durkin, III,* of counsel *(Durkin & Durkin,* attorneys), for appellants.

*Russel H. Beatie, Jr.,* of counsel, *pro se (Samuel J. Abate, Jr.,* with him on the brief; *Brown & Wood, attorneys),* for Russel H. Beatie, Jr., respondent.

## OPINION OF THE COURT

Asch, J.

After the death of her husband, inventor Charles DeLong, defendant Zofia Banszky DeLong, sought to recover the rights to use and commercialize certain patents in which George Erion, Jr., and George Erion, III, had a 50% interest and which the Erions had licensed to Agro-K, a Minnesota corporation.

With the assistance and on the advice of her son-in-law, Peter Alsop, defendant DeLong retained New York attorney, plaintiff Russel H. Beatie, Jr., to represent her in an attempt to revoke the license from the Minnesota corporation and to compel the commercialization of the patents. Under a contingency fee letter agreement dated February 1, 1984, Alsop agreed to pay $20,000 on behalf of his mother-in-law. In addition, Beatie was

"to receive 30% of all revenues of any kind generated by the patents * * * and received by Mrs. DeLong or her husband's estate.

"If Mrs. DeLong * * * receives by any of these means a gross amount of less than $500,000 * * * we will be paid our standard time charges or the contingent fee amount specified in the proceeding paragraph, whichever is less."

After negotiations and the institution of a lawsuit in Superior Court, Washington, D.C., the action was settled in September 1985. Attorney Beatie succeeded in having the Erions surrender their 50% interest in the five patents and their loan claims of $950,000 in return for an interest in the revenues generated by the patents. All revenue of any kind generated by the patents was to be administered by attorney Beatie, as escrow agent, for distribution to the Erions (under the settle-

ment documents, based upon their prior loans), himself (under the contingency fee agreement) and Mrs. DeLong (as 100% owner of the patents under the settlement). Under the settlement agreement, attorney Beatie was to receive 30% of the proceeds generated by the patents after deduction for taxes and transaction costs. Defendant DeLong executed these documents without seeking legal advice independent from Beatie.

Eight months later, after discharging Beatie, purportedly for cause, defendant DeLong consulted another attorney, defendant Durkin, a New Jersey practitioner, in New Jersey. She sought advice about the validity and enforceability of the contingency fee agreement with Beatie as well as the latter's interest and role in the settlement and escrow agreements. Durkin advised her that the contingency fee agreement and Beatie's interest in the patent proceeds and role as escrowee were unconscionable and unenforceable. He did not charge a fee. Defendant DeLong accepted this advice and, together with her son-in-law, Alsop, requested Durkin to prepare a nonexclusive licensing agreement allowing Alsop to commercialize the patent. Attorney Durkin did so in October of 1986. In accordance with its terms, Alsop was to deposit 5% of all gross sales into an escrow account, to be maintained by Durkin, for DeLong's benefit. The object of the escrow account was to protect the funds in the event of dispute. No withdrawals were to be made for 12 months. In fact, no withdrawals have been made and, indeed, Beatie objected to this alternate arrangement as a violation of his own rights.

Plaintiff Beatie commenced this action alleging in his first cause of action defendant DeLong's breach of the 1984 contingency fee agreement as well as the 1985 settlement and escrow agreements and, in a second cause of action against defendant Durkin, tortious interference with contract for advising DeLong that she need not comply with those contractual obligations. Defendant counterclaimed for malicious prosecution.

At the close of plaintiff's case, the IAS court dismissed plaintiff's punitive damage claim against Durkin but refused to dismiss the tortious interference claim, distinguishing between wanton conduct, of which the court found no evidence, and lack of good faith, based upon a failure to properly examine the facts concerning the contingency and settlement agreements, which the court found the jury might conclude existed.

As to this second, tortious interference, cause of action against defendant Durkin, the court charged the jury as follows:

"There is a general principle embodied in the law of the State of New York that attorneys should be free to advise their clients without fear of liability [to] third parties. However, the mere fact one is an attorney acting in a professional capacity does not make him absolutely immune from responsibility for his wrongful acts.

"An attorney may be held personally liable to a third party who sustains an injury in consequence of his wrongful act of improper exercise of authority, where the attorney has been guilty of fraud, collusion or of a malicious or tortious act. To find tortious interference against defendant Durkin you must also determine whether or not he acted in good faith, and to determine whether he acted in good faith you should decide whether the advice was based on reasonable legal ground. *If you find that defendant Durkin did not have reasonable legal ground to offer the advice he gave, you should find for the plaintiff.*" (Emphasis added.)

Although defendants did not object to this charge after it was given, they had previously requested the more favorable charge based directly upon Restatement (Second) of Torts § 772.

The jury was given the case on special interrogatories. It found that the Beatie contingency fee agreement was reasonable and enforceable; that DeLong had received moneys covered by that and the settlement agreement, albeit limited to $1,457; that Durkin's advice to DeLong constituted tortious interference with plaintiff's contingency fee agreement and the settlement and escrow agreements with DeLong; and that plaintiff was entitled to $250,000 compensatory damages from Durkin.

 The IAS court denied defendant's postverdict motion to set aside the verdict as against the weight of the evidence.

The jury's verdict that the Beatie contingency fee agreement was reasonable and enforceable, was not against the weight of the evidence. While Beatie had the burden of showing the contingency fee agreement was fair and reasonable, considering the nature of the services, the time, amount and controversy involved, and the results obtained, and that the terms thereof were fully disclosed to the clients *(Jacobson v Sassower,* 66 NY2d 991), plaintiff met his burden in these

respects. The matter was complex, the creation of a fund against which to collect was doubly contingent, and a very favorable result, i.e., 100% ownership of the patents and repayment of $950,000 in loans limited to patent proceeds, was obtained for defendant DeLong. Defendants claim that under the settlement agreements, Beatie increased his fee from that to which he was entitled under the contingency fee agreement, taking advantage of his superior knowledge and without disclosing such increase to client DeLong. However, defendants fail to show that Beatie's compensation actually was increased under the settlement agreements from that obtained under the contingency fee agreement. The claim that Beatie received an interest in the patents themselves for the first time under the settlement documents is unsupported. Under both the 1984 contingency fee and the 1985 settlement documents, attorney Beatie's interest was essentially 30% of revenues generated by the patents. The contingency fee agreement's provision for a lesser amount based upon standard time charges was rendered moot by plaintiff's devotion of 1,700 hours to the case. Defendants failed to demonstrate there was any violation of Code of Professional Responsibility DR 5-103, against obtaining an interest in the litigation, but rather it is clear that this arrangement was within the exception thereto relating to contingency fees. Payment to Beatie was not "guaranteed" anywhere in the settlement documents or mentioned in client DeLong's release, as contended by defendants; rather, the 30% contingency fee is set out only (from all the settled documents) in the escrow agreement, which was the only settlement document to which Beatie was a party—as escrow agent. Nor is there any authority to support defendant's contention that attorney Beatie was obliged to advise Mrs. DeLong of the desirability of obtaining independent legal advice before executing the settlement documents.

However, as to the $250,000 damage award against Durkin for tortious interference with contract, Durkin's conduct would be immunized from liability under the shield afforded attorneys in advising their clients, even when such advice is erroneous, in the absence of fraud, collusion, malice or bad faith (Restatement [Second] of Torts § 772; *Hahn v Wylie,* 54 AD2d 629; *Gifford v Harley,* 62 AD2d 5; *D. & C. Textile Corp. v Rudin,* 41 Misc 2d 916; *Kasen v Morrell,* 10 Misc 2d 176, *affd* 6 AD2d 816, *later mot* 18 Misc 2d 158, 162). While defendants contend that this issue is to be determined

under New Jersey law, as Durkin acted solely within New Jersey, and, does not have a New York office, the choice of law is largely irrelevant as defendants fail to demonstrate that New Jersey law is any more favorable on this issue than New York law.

■ Mere negligence by an attorney giving advice to his client is insufficient to give a right of action to a third party injured thereby *(Kasen v Morrell, supra)*. Plaintiff presented absolutely no evidence of Durkin's personal interest in the advice he gave to DeLong. While comment *e* to Restatement (Second) of Torts § 772 does provide that the advice must be honest, it also states: "Whether the advice was based on reasonable grounds and whether the actor exercised reasonable diligence in ascertaining the facts are questions important only in determining his good or bad faith. *But no more than good faith is required.*" (Emphasis added.)

The court's charge, therefore, allowing the jury to find defendant Durkin liable solely on the basis that his advice to DeLong had no reasonable legal ground, was erroneous. This error in the charge was preserved by defendants' precharge request, which the court ignored.

Further, we find plaintiff's case on this cause of action to be insufficient, as there was no evidence of bad faith, fraud, collusion or malice, which compels not only the vacatur of the money judgment against Durkin, but also dismissal of the cause of action as to him. Additionally, the damage award was insufficiently supported and was based solely upon speculation and conjecture *(see, Najjar Indus. v City of New York,* 87 AD2d 329, *affd* 68 NY2d 943). The damages are based upon plaintiff attorney Beatie's assertion that the commercial benefits to be derived from the patents was hindered between 1986 and 1989 because of the pendency of this dispute, caused by Durkin's advice. The requisite certainty of ascertaining any such damages is completely undermined and contradicted, however, by plaintiff's own prior showing in support of the reasonableness of the 30% contingency arrangement, that the commercialization and marketing success of the patents were quite vague and questionable. Moreover, plaintiff presented no expert testimony as to the marketability of the patents or on the issue of how much earnings they would have generated had this dispute not existed. It seems significant, as the record indicates, that although DeLong and her son-in-law Alsop had labored during these three years to commercialize the patents, their labors produced only $1,437 in revenues. Therefore, on

this record, the $250,000 damage award was unsupported and furnishes another ground for dismissal of the second cause of action.

Accordingly, the judgment of the Supreme Court, New York County (William Davis, J.), entered May 12, 1989, after jury verdict, should be modified, on the law and facts, to the extent of vacating the money judgment against defendant Durkin (the third and fourth decretal paragraphs) and dismissing the second cause of action in the complaint, and otherwise affirmed, without cost and disbursements.

SULLIVAN, J. P., CARRO, MILONAS and RUBIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on May 12, 1989, modified, on the law and facts, to the extent of vacating the money judgment against defendant Durkin (the third and fourth decretal paragraphs) and dismissing the second cause of action in the complaint, and otherwise affirmed, without costs and without disbursements.