Gerald A. MARKS, Plaintiff,

v.

Stanley STRUBLE, et. al., Defendants.

Civil Action No. 03–6225(MLC).

United States District Court,
D. New Jersey.

Nov. 18, 2004.

David J. Haber, Esq. & Justin M. Klein, Esq., Red Bank, NJ, for Plaintiff.

James M. McGovern, Jr., Esq., Lomurro, Davison, Eastman & Munoz, PA, Freehold, NJ, for Defendants.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter is before the Court on the motion by defendants, Stanley Struble, Snap-on Tools Company, LLC ("Snap-on"), Susan Marrinan, and Tari Williams, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. Also before the Court is the defendants' motion pursuant to Rule 72(a) to set aside the Order of the Magistrate Judge granting plaintiff, Gerald A. Marks, leave to file an amended complaint.[1] At issue is an attorney's com-

---

1. The Court, despite the lack of clarity in the moving papers, considers defendants Susan Marrinan and Tari Williams to be among those defendants moving to dismiss and to set

plaint of tortious interference with contract against a third party who independently settled a dispute with the plaintiff's retainer agreement client. The Court, for the reasons stated herein, will: (1) grant both motions; (2) dismiss the complaint and the amended complaint; and (3) grant plaintiff leave to file a second amended complaint.

## BACKGROUND

Plaintiff entered into a partial contingency fee agreement ("Retainer Agreement") with Robert Rinaldi on December 12, 2002. (Compl. at ¶ 4.) Rinaldi was a franchised Snap-on dealer "responsible for a territory within New York State." (Def. Br. in Supp. Mot. to Dismiss ("Def.Br.Mot.Dismiss") at 3.) The Retainer Agreement called for plaintiff to represent Rinaldi in connection with "difficulties and claims" Rinaldi had against Snap-on. (Compl. at ¶ 4.) The Retainer Agreement specifically provided that: (1) plaintiff be paid a partial contingency fee of one-third of the gross amount recovered by Rinaldi, and (2) Rinaldi pay plaintiff a non-refundable retainer of $3,500 upon signing the Agreement. (Marks Aff. at Ex. B.) The Retainer Agreement did not discuss termination of the lawyer-client relationship or what would happen if Rinaldi were to directly settle with the defendants without plaintiff's involvement. (Id.) Defendants and Rinaldi subsequently settled independently without plaintiff's involvement, knowledge, or consent. (Def. Br. Mot. Dismiss at 2.) The settlement was reflected in a settlement agreement signed by Rinaldi. (Marks Aff. at ¶ 22.)

Plaintiff filed a complaint, in New Jersey Superior Court on December 3, 2003, alleging that Struble and Snap-on tortiously interfered with his Retainer Agreement with Rinaldi. (Compl. at ¶ 15.) Struble and Snap-on removed to this Court on December 31, 2003. (Remov. Not.) Defendants then moved to dismiss the complaint for failure to state a claim, pursuant to Rule 12(b)(6), on January 8, 2004. (Not. of Mot.) Struble and Snap-on filed an answer and counterclaim on March 10, 2004. (3–10–04 Ans. & Counterclaim.) The counterclaim alleged that plaintiff tortiously interfered with the settlement agreement between Snap-on and Rinaldi. (Id. at ¶¶ 37–41.)

Plaintiff moved to file an amended complaint on March 29, 2004. Snap-on and Struble opposed, arguing that amending the complaint would be futile because, even if amended, the proposed amended complaint would still fail to state a claim upon which relief could be granted. (Def. Br. in Supp. to Mot. to Set Aside Magistrate Judge's Order ("Def.Br.Am.Compl.") at 2.) The Magistrate Judge rejected this argument and granted plaintiff's motion for leave to file an amended complaint on May 14, 2004. (Id.) Snap-on and Struble filed a notice of motion to set aside the Magistrate Judge's order, pursuant to Rule 72(a) and Local Civil Rule 72.1(c)(1), on May 27, 2004.

Plaintiff, pursuant to the Magistrate Judge's order, filed an amended complaint, on June 2, 2004, asserting a tortious interference claim against Marrinan and Williams, attorneys for Snap-on. (Am. Compl. at ¶¶ 3–4.) Plaintiff, in the amended complaint, specifically alleges that Marrinan and Williams "advised [Struble] to tortiously interfere and either one or both [of the attorneys] prepared the settlement agreement that Rinaldi signed." (Id. at ¶ 11.) Plaintiff, in support of this asser-

---

aside. This is so even though Marrinan and Williams are not named as moving parties in either motion. *See* 10–26–04 Oral Arg. (defense attorney James M. McGovern, Jr. entering his appearance on behalf of "all of the defendants").

tion, relies on Struble's testimony that he: (1) was unsure who prepared the settlement agreement; (2) received the agreement from Snap-on; and (3) discussed the agreement with Williams. (*Id.* at Ex. A, 11–22.)

The Court now considers defendants' motions: (1) to dismiss for failure to state a claim, and (2) to set aside the Magistrate Judge's order granting leave to file an amended complaint.

## DISCUSSION

### I. *Jurisdiction*

Subject matter jurisdiction is based on the diversity of the citizenship of the parties and the amount in controversy being greater than $75,000.[2] 28 U.S.C. § 1332.

### II. *Choice of Law: Which State's Substantive Law Applies?*

A district court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New Jersey applies the "governmental-interest" choice-of-law test for tort claims, applying the law of "the state with the greatest interest in governing the particular issue" in the underlying litigation. *Veazey v. Doremus,* 103 N.J. 244, 510 A.2d 1187, 1189 (1989).

The initial step in this analysis considers whether a conflict exists between the laws of the interested jurisdictions. *Id.* The Court, if an actual conflict exists, must then "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Id.* The contacts considered by the Court include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Erny v. Estate of Merola,* 171 N.J. 86, 792 A.2d 1208, 1217 (2002). If a state's contacts are not related to the policies underlying its law, then that state does not possess an interest in its law applying to the underlying litigation. *Veazey,* 510 A.2d at 1189. "[T]he qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply." *Id.*

There is no conflict here because New Jersey and New York law on tortious interference with an existing contract are in accord. *See DiGiorgio Corp. v. Mendez & Co., Inc.,* 230 F.Supp.2d 552, 557–58 (D.N.J.2002); *Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.,* 241 F.Supp.2d 246, 278 (S.D.N.Y.2002). The Court, however, will nonetheless refer to New York law because neither the parties' nor the Court's research has revealed applicable New Jersey case law that specifically addresses the validity of an attorney's claim against a third party for tortious interfer-

---

**2.** Plaintiff is a New Jersey citizen. (7–20–04 Order.) Snap-on is a citizen of Delaware and Wisconsin. (6–9–04 Order to Show Cause at 3 n. 2.) Snap-on does business in New Jersey through its branch office located in Edison, New Jersey. (Compl.¶ 5.) Struble, the regional manager for Snap-on's eastern region, is a citizen of Pennsylvania. (7–20–04 Order.) Marrinan, general counsel for Snap-on, is a Wisconsin citizen. (6–9–04 Order to Show Cause at 3 n. 2.) Williams, an "outside lawyer" for Snap-on, is a California citizen. (*Id.*) Rinaldi is a New York citizen. (*Id.*)

The amount in controversy threshold is also satisfied. (7–20–04 Order.)

ence with a retainer agreement. New York law, however, does address the validity of such a claim.

The Court, moreover, finds that New York's contacts with the underlying litigation outweigh New Jersey's contacts. Rinaldi is a citizen of New York and a Snapon dealer in New York. The Retainer Agreement pertained to litigation arising out of Rinaldi's dealership in New York. This dispute involves that Retainer Agreement. Struble allegedly interfered with plaintiff's Retainer Agreement by going to Rinaldi's home in New York and inducing Rinaldi to sign a settlement agreement. The Court, accordingly, finds that New York has the "greatest interest" in its law applying here.

### III. *Analysis of Motion to Dismiss*

#### A. *Applicable standard of review under Rule 12(b)(6)*

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted does not attack the merits of the action, but merely tests the legal sufficiency of a complaint. *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). A court may grant a motion to dismiss a complaint under Rule 12(b)(6) "only if, accepting all alleged facts as true, the plaintiff is not entitled to relief." *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir. 1986). *See also Doe v. Delie,* 257 F.3d 309, 313 (3d Cir.2001).

The Court, when considering such a motion, must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). A court need not, however, credit "bald assertions" or "legal conclu-

sions," nor should it accept "unwarranted inferences" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). "Dismissal of claims [on a motion to dismiss] is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim upon which relief may be granted." *Jakomas v. McFalls,* 229 F.Supp.2d 412, 419 (W.D.Pa. 2002).

The Court, when confronted with a Rule 12(b)(6) motion to dismiss, generally only considers the allegations in the complaint, exhibits attached to the complaint, and public records. *Beverly Enters., Inc. v. Trump,* 182 F.3d 183, 190 n. 3 (3d Cir. 1999). We generally cannot "consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997). We may, however, consider all documents that are "integral to or explicitly relied upon in the complaint." *Id.* (quotations and citation omitted).

#### B. *Tortious interference with an existing contract claim*

Defendants argue that the complaint should be dismissed with prejudice because it does not, and cannot, plead a cause of action against defendants for tortious interference with an existing contract. The Court, for the reasons stated *infra,* agrees with defendants that the complaint as written fails to state a claim upon which relief can be granted. (Def. Br. Mot. Dismiss at 5–6.) We, however, reject the proposition that the conduct described in plaintiff's motion papers cannot, as a matter of law, give rise to a claim for tortious interference with an existing contract. (*Id.* at 5–11.)

None of the parties provided case law relevant to this action, specifically case law

pertaining to the validity of an attorney's tortious interference with contract claim against a third party who independently settles with the attorney's client. The Court, therefore, has performed independent research on this issue.

■ The elements of a tortious interference with an existing contract claim are that: (1) a valid contract exists; (2) the third party had knowledge of the contract; (3) "the third party intentionally and improperly procured the breach of the contract;" and (4) the plaintiff sustained damages as a result of the breach. *Hidden Brook*, 241 F.Supp.2d at 278.

■ A client has an absolute right to cancel a retainer agreement, discharge an attorney at any time, and independently settle a case without being liable for breach of contract. *Lurie v. New Amsterdam Cas. Co.*, 270 N.Y. 379, 1 N.E.2d 472, 473 (1936); *Oishei v. Metro. St. Ry. Co.*, 110 A.D. 709, 97 N.Y.S. 447, 448 (1st Dep't 1906) ("[A] client has the right to settle an action brought by him at any time ..., [even without his attorney's consent]. [The client] alone ... determine[s] whether he will continue the litigation or agree with his adversary to settle and discontinue it.") But, a client, in such cases, may owe the attorney, on the basis of quantum meruit, the reasonable value of services rendered up until the date of cancellation. *Id.See also In re Papadopoulos*, 283 A.D.2d 649, 725 N.Y.S.2d 364, 365 (2d Dep't 2001) (citing *Lurie* and recognizing

that a client has the right to settle a case but the attorney may then recover in quantum meruit).

■ New York courts, even though retainer agreements are terminable at will, recognize an attorney's cause of action against a third party who interferes with the attorney's contingency fee agreement by inducing the client to enter into an independent settlement agreement. *Lurie*, 1 N.E.2d at 473.[3] The third party interference must be "wrongful." *Id.See also* RESTATEMENT (SECOND) OF TORTS § 766A cmt. a (2004) (one who "improperly interferes" with a contract is liable for tortious interference with another's contract).

■ Wrongful misconduct inducing a party to terminate an at-will contract consists of: (1) fraudulent misrepresentations; (2) threats; and/or (3) other unfair, unlawful conduct. *See Huebener v. Kenyon & Eckhardt, Inc.*, 142 A.D.2d 185, 534 N.Y.S.2d 952, 957 (1st Dep't 1988); *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445, 452 (1980). An attorney cannot recover on a claim of tortious interference with an existing contract if evidence of such misconduct is absent. *See Greenberg v. Walsh*, 279 A.D.2d 338, 718 N.Y.S.2d 847, 847 (1st Dep't 2001) (attorney's claim that defendants collusively settled litigation in order to deprive him of a contingency fee was unsupported by "any evidence that [defendant] threatened

**3.** *Accord Edwards v. Travelers Ins.*, 563 F.2d 105, 120–21 (6th Cir.1977); *Employers Liab. Assurance Corp. v. Freeman*, 229 F.2d 547, 549 (10th Cir.1955); *State Farm Ins. Co. v. Gregory*, 184 F.2d 447, 448 (4th Cir.1950); *Dorsey v. Home Depot U.S.A., Inc.*, 271 F.Supp.2d 726, 730 (D.Md.2003); *Herron v. State Farm Mut. Ins. Co.*, 56 Cal.2d 202, 14 Cal.Rptr. 294, 363 P.2d 310, 312 (1961); *Edwards v. Dowdy*, 85 Ga.App. 876, 70 S.E.2d 608, 614 (1952); *Knell v. State Farm Auto.*

*Ins. Co.*, 32 Ill.App.3d 491, 336 N.E.2d 568, 572–73 (1975); *Klauder v. Cregar*, 327 Pa. 1, 192 A. 667, 668 (1937); *Keels v. Powell*, 207 S.C. 97, 34 S.E.2d 482, 483 (1945); *Goldman v. Home Mut. Ins. Co.*, 22 Wis.2d 334, 126 N.W.2d 1, 5–6 (1964). *Contra Employers Cas. Co. v. Moore*, 60 Ariz. 544, 142 P.2d 414 (1943); *Walsh v. O'Neill*, 350 Mass. 586, 215 N.E.2d 915 (1966); *Krause v. Hartford Accident & Indem. Co.*, 331 Mich. 19, 49 N.W.2d 41 (1951).

the codefendant or used other unlawful means to induce [co-defendant's] termination of [attorney's] retainer" agreement); *Licht v. Rosenthal & Slotnick,* 32 N.Y.S.2d 150, 151 (1941) (reversing judgment and dismissing complaint because attorney could not recover in tortious interference with contract claim where he failed to produce evidence showing "fraud, misrepresentation or other unfair conduct"). Mere "persuasion and [an] offer of better terms" does not give rise to a tortious interference with contract claim. *Guard-Life,* 428 N.Y.S.2d 628, 406 N.E.2d at 452.

The Court of Appeals of New York, in *Lurie v. New Amsterdam Casualty Co.,* found an insurance company liable for unlawfully inducing a client to breach a retainer agreement where the insurance company threatened the client that he would not recover any money unless he repudiated the retainer agreement with his attorney. 1 N.E.2d at 473. *See also Realuyo v. Diaz,* No. 98–7684, 2000 WL 307407, at \*4–5 (S.D.N.Y. Mar. 23, 2000) (third party defendant not entitled to dismissal of claim under Rule 12(b)(6) because attorney sufficiently alleged that defendant tortiously interfered with attorney's retainer agreement by threatening client with "serious economic repercussions" if client did not terminate attorney and enter into a "secret settlement" with defendant).

The Supreme Court of Pennsylvania reached a similar conclusion in *Klauder v. Cregar.* The *Klauder* court held that an attorney was entitled to recover for tortious interference with his retainer agreement where an insurance company, after the client refused to settle without consulting her attorney, told the client that the power of attorney she signed was invalid and that she would not have to pay her attorney if she settled out of court. *See Wahl v. Strous,* 344 Pa. 402, 25 A.2d 820, 822 (1942) (finding that attorney failed to prove tortious interference because he did not show that the third party defendant, in the course of inducing the client to settle, told the client not to pay plaintiff or misrepresented to the client what her obligations were in regard to the retainer agreement).

■ A third party also wrongfully interferes with an attorney-client retainer agreement where the party induces a client to independently settle by telling the client that there is no need for an attorney. *See Employers Liability,* 229 F.2d at 549–50 (insurance company liable for tortious interference with attorney's retainer agreement where adjustor approached client while client was hospitalized, knowing that client was represented by counsel, and told client that he did not need an attorney, the insurance company would pay his bills, and the company would stop paying if client sued); *State Farm,* 184 F.2d at 448 (affirming judgment in favor of attorney where insurance adjustor induced client to settle for less than the policy was worth and "to abandon his lawyer and save the fee which he had contracted to pay"). The Court, based upon the case law cited *supra,* rejects the claim that defendants, as a matter of law and public policy, were absolutely justified in settling with Rinaldi. (Def. Br. Mot. Dismiss at 5–12.)

■ The Court, accepting all allegations in the complaint as true and viewing the alleged facts in the light most favorable to plaintiff, nonetheless finds that the complaint fails to sufficiently state a claim for tortious interference with an existing contract. Rule 8(a) requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. (8)(a). The purpose of this rule is to provide the adversary with "fair notice ... of the nature and basis of the claim asserted and a

general indication of the type of litigation involved." *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967).

Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). The purpose of Rule 9(b) is to provide adversaries with fair "notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984).

The complaint specifically alleges that: (1) plaintiff informed Snap-on's legal department, on or before March 2003, that he was representing Rinaldi in connection with Rinaldi's claims against Snap-on (Compl. at ¶ 5); (2) Struble, "Snap-on's Regional Manager for the Eastern Region[,] was aware that [Rinaldi] was represented by [plaintiff]" (*id.* at ¶ 6); (3) Snapon "interfered with both the attorney-client relationship between [plaintiff] and [Rinaldi] as well as the contractual rights of plaintiff" (*id.* at ¶ 7); and (4) Struble, with Snap-on's knowledge and consent, took advantage "of [Rinaldi and his wife] at a time both of them were under tremendous emotional strain" and induced Rinaldi to enter into a confidential settlement agreement in order to deprive plaintiff of his contingency fee (*id.* at ¶¶ 8–9). The motive behind Snap-on's alleged tortious conduct, accordingly to plaintiff, was to "punish [plaintiff] for his present and past representation of many Snap-on Tool dealers nationwide." (*Id.* at ¶¶ 10, 14 (quotations omitted).)

The complaint sufficiently alleges the first and last elements of a tortious interference with contract cause of action—that a contract exists and that the plaintiff suffered damages. Plaintiff, in paragraph 4 of the complaint, avers that he entered into a Retainer Agreement with Rinaldi. Such retainer agreements are considered "legal and valid contracts and as such [are] entitled to the protection of the law." *Klauder*, 192 A. at 668. Plaintiff also sufficiently pleads that he sustained damages and was deprived of his just and fair contingency fee. (Compl.¶ 15.) *See* Fed.R.Civ.P. 8(a).

Plaintiff also sufficiently avers that defendants knew that a contract existed between plaintiff and Rinaldi. We reject defendants' argument that plaintiff's failure to specifically allege that defendants had knowledge of the Retainer Agreement itself is fatal to plaintiff's cause of action. (Def. Br. Mot. Dismiss at 11.) Plaintiff, in paragraphs 5 and 6 of the complaint, alleges that defendants were aware that he represented Rinaldi. This general averment is sufficient under Rule 9(b). Fed.R.Civ.P. 9(b) (stating: "Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). A plaintiff must establish that a defendant had knowledge of the contract at issue. *Don King Prods., Inc. v. Douglas*, 742 F.Supp. 741, 775–76 (S.D.N.Y. 1990). A plaintiff, however, need not prove that a defendant had "perfect or precise knowledge of the terms and conditions of the contract in issue." *Id.* Plaintiff here sufficiently alleges that defendants knew of the attorney-client relationship between himself and Rinaldi. Assuming that defendants were aware of the attorney-client relationship, defendants must have also known that a Retainer Agreement existed between plaintiff and Rinaldi. *C.f.* N.J.R. Prof'l Conduct 1.5(b), (c) (2004) (requiring an attorney to communicate a contingency fee agreement in writing). The Court, therefore, finds that plaintiff's gen-

eral averment that defendants knew that plaintiff represented Rinaldi is sufficient.

 The complaint, however, is flawed as it pertains to element three of a tortious interference claim-that the third party intentionally and improperly induced another to breach the contract. Plaintiff's assertion that defendants intentionally induced Rinaldi to independently settle his claim is sufficient under Rule 9(b) (Compl.¶¶ 13, 14), as intent may be generally averred. Fed.R.Civ.P. 9(b). Plaintiff's claim that defendants acted improperly, however, is not sufficiently pleaded under Rule 9(b).

Plaintiff alleges that defendants "induced [the Rinaldis] to enter into a Confidential Settlement Agreement that deprived the plaintiff of one third of the settlement amount given by Snap-on to [the Rinaldis]." (Compl.¶ 8.) Plaintiff's mere claim that defendants induced Rinaldi to independently settle is not in itself sufficient to state a cause of action for tortious interference with an existing contract. As discussed *supra,* a defendant is liable for inducing a client to breach a retainer agreement only when the defendant engages in improper, wrongful misconduct, *i.e.,* makes fraudulent representations or threats or engages in other unfair, unlawful actions. *See Huebener,* 534 N.Y.S.2d at 957; *Guard–Life,* 428 N.Y.S.2d 628, 406 N.E.2d at 452. Rule 9(b)'s requirement that fraud be pleaded specifically is thereby implicated, particularly since plaintiff alleges, in his affidavit in opposition to defendants' motion to dismiss, that defendants made fraudulent misrepresentations to induce Rinaldi to sign the settlement agreement and thereby breach the Retainer Agreement. The complaint, however, fails to specifically allege facts indicating how defendants' inducement constituted improper, wrongful

misconduct and therefore fails to comport with Rule 9(b).

Plaintiff, in his affidavit in opposition to defendants' motion to dismiss, states that:

> Instead of dealing through counsel, Defendant Stanley Struble, went to Mr. Rinaldi's house, with a settlement agreement prepared by Snap-on's [l]egal [d]epartment, to pressure him to settle on at least two or three occasions and Defendant Struble specifically told Mr. Rinaldi that he did not have to pay me because Snapon's legal department had advised him that if Rinaldi discharged me before settlement papers were signed, he would not have to pay my fee.

> . . . . .

> [Rinaldi told me] that he had been advised by defendant Struble that Snapon's legal department had told [Rinaldi] that he did not have to pay me if he settled directly with Snap-on.

(Marks Aff. at ¶¶ 22, 33. *See also* Pl. Br. Mot. Dismiss at 8.)

 Defendants' conduct in telling Rinaldi that he would not have to pay plaintiff if he settled independently with defendants may constitute wrongful or improper conduct. *See Wahl,* 25 A.2d at 822. This conduct may also constitute fraudulent misrepresentation. Although, as discussed *supra,* a client may discharge an attorney at any time, a client may still be liable to an attorney for services rendered in quantum meruit. *In re Papadopoulos,* 725 N.Y.S.2d at 365. Assuming plaintiff's affidavit allegations to be true, defendants' representations, that Rinaldi would not owe plaintiff money if Rinaldi discharged plaintiff before he independently settled with defendants, are therefore not necessarily accurate. Defendants' representations may have been fraudulent because

defendants' conduct exposed Rinaldi to potential litigation brought by plaintiff.[4]

We, however, cannot consider these allegations because plaintiff failed to specifically allege fraudulent conduct in the complaint. Rather, he made such allegations for the first time in his response to defendants' motion to dismiss. *See In re Burlington Coat Factory*, 114 F.3d at 1426 ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."); *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotations omitted).

Even if this court were to consider plaintiff's allegations that defendant Struble fraudulently induced Rinaldi to sign the settlement agreement, plaintiff's conclusory allegations fail to satisfy Rule 9(b). *See Liafail, Inc. v. Learning 2000, Inc.*, No. 01–599, 2002 WL 31667861, at *4 (D.Del. Nov. 25, 2002) (Rule 9(b) is not satisfied where plaintiff makes conclusory allegations as to what defendant's fraudulent misrepresentations were for the first time in an answer brief on summary judgment).

■ Plaintiff alleges that defendants improperly took advantage of the Rinaldis knowing that they "were under tremendous emotional strain and in order to deprive the plaintiff of his fee." (Compl. at ¶ 9.) To the extent that plaintiff

alleges fraud on the part of the defendants in order to induce the Rinaldis to breach the Retainer Agreement, the complaint fails to comport with Rule 9(b). While a plaintiff may satisfy Rule 9(b)'s specificity requirement by alleging "date, place or time" of the alleged misconduct it is not necessary to be that precise. *Seville*, 742 F.2d at 791. A plaintiff must however, at a minimum, use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* Plaintiff here fails to do this. Plaintiff instead makes conclusory, "bald" assertions that defendants fraudulently induced the Rinaldis to settle. To the extent that plaintiff cites defendants' conduct in taking advantage of the Rinaldis in support of a claim other than fraud, the complaint fails to comport with Rule 8(a). It is unclear what this other claim would be or what relevance defendants' alleged misconduct has to plaintiff's tortious interference claim.

■ Plaintiff's allegation in the complaint that defendants induced Rinaldi to settle in order to punish him and to discourage him from representing Snap-on dealers in the future is sufficiently pleaded under Rule 9(b). *See* Fed.R.Civ.P. 9(b) (providing that motive and intent may be generally averred). While motive may be relevant to defendants' fraudulent misrepresentations or other unlawful conduct, motive on the part of defendants, however,

---

**4.** The Court acknowledges defendants' claim that plaintiff is not entitled to a fee because plaintiff had not yet performed services prior to Rinaldi terminating the Retainer Agreement. (Def. Br. Mot. Dismiss at 8–9.) The Court recognizes that it is unclear to what extent plaintiff performed services for Rinaldi prior to Rinaldi's settling with the defendants. It, moreover, is also unclear if Rinaldi owes plaintiff fees and whether the initial retainer amount paid upon Rinaldi's signing the Re-

tainer Agreement would offset any fees owed. (Marks Aff. at Ex. B.) *See DeGraaff v. Fusco*, 282 N.J.Super. 315, 321, 660 A.2d 9 (App.Div. 1995) (holding that the unused portion of a nonrefundable retainer should be returned to the client if it would be unconscionable for the attorney to keep it). We, however, decline to consider if, and the extent to which, Rinaldi owes plaintiff fees in quantum meruit because the issue is not before us nor is it appropriate at this stage of litigation.

is not itself sufficient to maintain a tortious interference with contract cause of action.

The Court is mindful of the liberal notice pleading policy and the danger of focusing too narrowly upon the complaint's particular language. *See Seville,* 742 F.2d at 791; *In re Craftmatic Sec. Litig.,* 890 F.2d 628, 645 (3d Cir.1989). Nonetheless, the complaint as written fails to satisfy the threshold requirements of Rule 9(b). We, accordingly, grant defendants' motion to dismiss for failure to state a claim upon which relief can be granted. We, however, reject defendants' request that the motion be granted with prejudice and instead grant plaintiff leave to file a second amended complaint. (Def. Br. Mot. Dismiss at 6.) *See Johnsrud v. Carter,* 620 F.2d 29, 32–33 (3d Cir.1980) (recognizing that dismissing a claim on the merits, without leave to further plead, is disfavored).

### IV. *Analysis of Defendants' Motion to Set Aside the Magistrate Judge's Order*

 Defendants move to set aside the Magistrate Judge's order granting plaintiff leave to file an amended complaint. The amended complaint adds claims against Marrinan and Williams, attorneys for Snap-on, on the grounds that "either one or both [attorneys] prepared the settlement agreement that Rinaldi signed." (Am.Compl.¶ 11.) Defendants argue that the Magistrate Judge erred in granting plaintiff leave to file an amended complaint because: (1) amending the complaint is futile since it fails to cure the defects present in the initial complaint; (2) the amended complaint fails to state a claim upon which relief can be granted; and (3) plaintiff has failed to explain his undue delay in moving for leave to amend. (Def. Br. Am. Compl. at 9–21.)

 A Magistrate Judge is accorded wide discretion in addressing non-dispositive motions. *Miller v. Beneficial Mgmt. Corp.,* 844 F.Supp. 990, 997 (D.N.J. 1993). The Court may not reverse, modify, or vacate a Magistrate Judge's order addressing a non-dispositive motion unless that order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(a); *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1113 (3d Cir.1986). This is so even if we would have decided the issue differently. *Toth v. Alice Pearl, Inc.,* 158 F.R.D. at 47, 50 (D.N.J.1994). "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.,* 131 F.R.D. 63, 65 (D.N.J. 1990) (quotations and citation omitted). A Magistrate Judge's determination is contrary to law if the Magistrate Judge misinterpreted or misapplied the applicable law. *Gunter v. Ridgewood Energy Corp.,* 32 F.Supp.2d 162, 164 (D.N.J.1998). "The party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law." *Cardona v. Gen. Motors Corp.,* 942 F.Supp. 968, 971 (D.N.J. 1996).

 Rule 15(a) provides that a plaintiff may amend an initial complaint upon "leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "[A] district court has the discretion to deny this request if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir.2000). "Futility"

means that the amended complaint fails to state a claim upon which relief can be granted. *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000). The district court, in considering whether an amended complaint is futile, "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* The Court, therefore, must accept allegations in the amended complaint as true and construe the allegations in the complaint in the light most favorable to the plaintiff. *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.,* 106 F.Supp.2d 761, 765 (D.N.J.2000). The Court looks only to the pleadings in considering whether the amendment to the complaint is futile. *Id.*

> An attorney who advises or assists a client to make or break a contract, to enter or dissolve a contractual relation, is not liable to a nonclient for interference with contract or with prospective contractual relations or with a legal relationship, if the lawyer acts to advance the client's objectives without using wrongful means.

RESTATEMENT (THIRD) THE LAW GOVERNING LAWYERS § 57(c)(2004). Attorneys, thus, are "immunized from liability [for tortious interference with contract] under the shield afforded attorneys in advising their clients, even when such advice is erroneous" or negligent. *Beatie v. DeLong,* 164 A.D.2d 104, 561 N.Y.S.2d 448, 451 (1st Dep't 1990). But, an attorney may, under New York law, be liable to third parties for aiding and abetting tortious interference with contract "for actions taken in furtherance of his role as counsel upon proof ... of the existence of fraud, collusion, malice[,] or bad faith." *Joel v. Weber,* 197 A.D.2d 396, 602 N.Y.S.2d 383, 384 (1st Dep't 1993).

We find, measuring the amended complaint against this applicable law, that, as pleaded, it fails to satisfy this standard.

Plaintiff, upon repleading, could state a claim upon which relief may be granted if he alleges that Marrinan and Williams advised Snap-on and Struble to interfere with the Retainer Agreement by wrongful means, *e.g.,* fraud. The amended complaint as written, however, fails to specifically allege such conduct. The Court, accordingly, will grant defendants' motion to set aside the Magistrate Judge's order because the amended complaint suffers from the same defects as the initial complaint. *See supra* III.B.

### *CONCLUSION*

The Court, for the reasons stated *supra,* will: (1) grant defendants' motion to dismiss for failure to state a claim upon which relief can be granted; (2) dismiss the initial complaint without prejudice and grant plaintiff leave to file a second amended complaint; (3) grant defendants' motion to set aside the Magistrate Judge's order granting plaintiff leave to file an amended complaint; and (4) dismiss the amended complaint without prejudice. An appropriate order accompanies this memorandum opinion.